**McQUINN, Appellant,**

**v.**

**McQUINN, Appellee.**

[Cite as *McQuinn v. McQuinn* (1996), 110 Ohio App.3d 296.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–06–099.

Decided April 8, 1996.

*Mary Lou Kusel,* for appellant.

*Fred Ross,* for appellee.

POWELL, Judge.

Plaintiff-appellant, Gerald W. McQuinn, appeals an order of the Butler County Court of Common Pleas, Domestic Relations Division, which terminated his twenty-four-year marriage to defendant-appellee, Margaret A. McQuinn.

The parties were married on July 17, 1971 and have three children, one of whom was emancipated at the time of the divorce. Appellee moved out of the marital home in January 1994.

Appellee works as a secretary for the Middletown Regional Hospital, where she has been working for at least eight years and earns $16,000 to $17,000 a year. Appellee is currently forty-eight years old. Before he took early retirement in November 1992, appellant was employed by AK Steel Corporation (f.k.a. Armco Steel Company) for almost thirty-four years. Appellant is unemployed and earns $22,000 a year solely from his retirement benefits from AK Steel Corporation. Appellant is currently fifty-five years old.

On February 7, 1994, appellant filed a complaint for divorce in the trial court. A hearing was conducted by the trial court on September 12, 1994. On May 12, 1995, the trial court filed its judgment entry and decree of divorce which provides in relevant part:

"Mr. McQuinn's pension with the AK Steel Corporation is in in-pay status. The marital portion of that pension is valued at $149,812.06. In addition, Mr. McQuinn received a supplement to his pension. The marital portion of the supplement is valued at $8,489.08. Mrs. McQuinn has a pension with Middletown Regional Hospital. The marital portion of her pension is valued at $3,142.08.

"The parties' marital real estate has a value of $130,000.00. There is a mortgage balance owing upon that property in the amount of $70,000.00. The parties further stipulate that Mr. McQuinn has an $11,000.00 non-marital interest in the marital home leaving marital equity in the amount of $49,000.00.

"The parties further stipulate that Mr. McQuinn shall be the residential parent of the minor children Troy and Daniel. Mrs. McQuinn shall receive Schedule 'B' Visitation.

" * * *

"IT IS ORDERED, ADJUDGED AND DECREED that the marital portions of Mr. McQuinn's pension be divided equally between Mr. and Mrs. McQuinn by means of a Qualified Domestic Relations Order. This order applies to both the pension and the pension supplement. The effective date of this division shall be September 30, 1994. Counsel for Mrs. McQuinn shall prepare said Qualified Domestic Relations Order, and submit same for approval both to this Court and to the Plan Administrator.

" * * *

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Mrs. McQuinn shall retain the entire interest in her own pension as an offset against Mr. McQuinn's receipt of the bulk of the household goods and furnishings.

"Regarding the real estate, IT IS ORDERED, ADJUDGED AND DECREED that Mr. McQuinn may continue to reside in the marital property for a period of two (2) years from the date of September 30, 1994, or until the youngest child graduates from high school, whichever event first occurs. During his residency, Mr. McQuinn shall be solely responsible for the payment of the mortgage, taxes, utilities, repairs and other expenses related to that property. At the expiration of the time period, Mr. McQuinn shall sell the marital residence. The net proceeds, after payment of expenses of sale, shall be divided as follows:

"Mr. McQuinn shall receive the first $11,000.00. The balance of the proceeds shall be divided equally between Mr. and Mrs. McQuinn.

"The Court finds that the child support has been calculated correctly in accordance with the Statute and that Mrs. McQuinn shall pay $342.33 per month or $79.90 per week. The Court further finds that Mrs. McQuinn is in arrears in her child support obligation in the amount of $1,035.00 as of September 9, 1994. * * *

"IT IS THE ORDER of the Court that in the event Mrs. McQuinn has not caught up her arrearage or in the event she has accumulated additional arrearages at the time of the sale of the marital residence, the arrearages shall be caught up by deducting them from her share of the proceeds."

Appellant timely filed this appeal and raises three assignments of error. Appellant's first assignment reads as follows:

"The trial court erred to the prejudice of the appellant in its calculations of child support."

Appellant argues that it was error for the trial court to calculate appellee's child support obligation based solely on her wages. Appellant argues that since the trial court ordered the marital portion of appellant's pension and its supplement to be divided equally between the parties, the amount of pension to be received by appellee should have been included in the determination of her gross income for purposes of child support calculation. Appellant also argues that it was error for the trial court to fail to include in its child support calculation the cost of health insurance paid by appellant to cover the parties' minor children.

By order filed February 7, 1994, the trial court designated appellant as the residential parent and ordered appellee to pay appellant $39.75 per child per week in child support. The trial court then properly calculated appellee's child support obligation based solely on her wages. On March 14, 1994, appellee filed a motion to modify the child support order. By judgment entry filed May 12, 1995, the trial court divided the marital portion of appellant's pension and its supplement equally between the parties and held that "the child support ha[s] been calculated correctly in accordance with the Statute * * *." The trial court filed a worksheet with its May 12, 1995 judgment entry. The worksheet shows that the trial court recalculated appellee's child support obligation based solely on her wages.

The issue before this court is whether the portion of appellant's pension that appellee is receiving as part of the divorce settlement should be included in her gross income for purposes of child support calculation. R.C. 3113.215(A)(1) defines "income" for child support purposes as "(a) [f]or a parent who is employed to full capacity, the gross income of the parent." R.C. 3113.215(A)(2) in turn defines "gross income" as:

" * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses * * *, commissions, royalties, tips, rents, dividends, severance pay, *pensions,* interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, benefits received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration, spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined, and all other sources of income * * *." (Emphasis added.)

R.C. 3113.215(A)(2) defines "gross income" as the total of all earned and unearned income from all sources, including pensions. It is well established that

the definition of income as set forth in R.C. 3113.215 is intended to be broad and flexible. See *Williams v. Williams* (1991), 74 Ohio App.3d 838, 843, 600 N.E.2d 739, 742. Such an expansive definition is necessary to ensure that the best interests of children, the intended beneficiaries of child support awards, are protected. It is also well established that the procedure for computing child support obligations set forth in R.C. 3113.215 is mandatory, and that its terms "must be followed literally and technically in all material aspects." *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus. In light of the fact that the definition of gross income includes pensions, the fact that this pension account is in pay status and the fact that appellee will receive her share of appellant's pension in monthly payments, we find that appellee's share of appellant's pension must be included in her gross income for purposes of child support calculation. We therefore find that the trial court erred in calculating appellee's child support obligation based solely on her wages.

■ With regard to the cost of health insurance paid by appellant to cover the parties' minor children, we agree with appellant that the trial court erred in failing to include it in its child support calculations on line nineteen of the worksheet as required by R.C. 3113.215(B)(1). The trial court's decision is reversed as to the amount of child support ordered and the cause is remanded to the trial court to (1) include in its determination of appellee's gross income the monthly amount of pension income appellee is to receive by means of a qualified domestic relations order ("QDRO")[1] as provided in the trial court's judgment entry and decree of divorce, and (2) include on line nineteen of the worksheet the cost of health insurance paid by appellant to cover the parties' minor children. Appellant's first assignment of error is well taken and sustained.

■ Appellant's second assignment of error reads as follows:

"The trial court erred to the prejudice of the appellant by allowing the appellee to pay her arrearages in child support at the time of the sale of the marital real estate, and further authorizing the appellee to incur additional arrearages to be paid when the marital real estate was sold."

R.C. 3113.21(A)(1) states:

"In any action in which support is ordered * * *, the court shall include in the support order a general provision * * * requiring the withholding or deduction of wages * * * of the obligor * * * to ensure that withholding or deduction from

---

1. By entry filed July 18, 1995, the trial court granted appellant's June 7, 1995 motion to stay the proceedings and the order for a QDRO pending the outcome of the appeal before this court. As of August 7, 1995, a QDRO had not been filed.

the wages * * * of the obligor is available from the commencement of the support order for the collection of the support and any arrearages that occur."

It is well established that it is within a trial court's authority to reduce arrearages on child support to a lump sum judgment which is enforceable against a party, the same as any other judgment. *Davis v. Davis* (1983), 12 Ohio App.3d 38, 40, 12 OBR 125, 127, 465 N.E.2d 917, 919. "No abuse of discretion occurs merely because the trial court chooses to satisfy such a judgment out of the division of marital property." *Id.*

While it is appropriate for a trial court to make an obligor satisfy his child support arrearages out of his share of the net proceeds from the sale of the marital home, *id.*, in the case at bar, we agree with appellant that the trial court erred in allowing appellee to satisfy her child support arrearages in two years when the parties' marital home will be sold. We are aware that by allowing appellant to reside in the marital home for two years, the trial court consequently has delayed appellee's share of the marital equity for two years. However, the record shows that the trial court's decision to let appellant and the parties' minor children reside in the house was based on the parties' desire to avoid any further disruptions in the children's lives, at least until the oldest son graduates from high school.[2] Furthermore, it is well established that "court-ordered support is for the benefit of the children rather than the custodial parent * * *." *Nelson v. Nelson* (1990), 65 Ohio App.3d 800, 804, 585 N.E.2d 502, 505.

We therefore hold that the trial court erred in allowing appellee to satisfy her child support arrearages at the time of the sale of the marital home, that is, two years from September 30, 1994. Appellant's second assignment of error is well taken and sustained.

Appellant's third assignment of error reads as follows:

"The trial court erred to the prejudice of the plaintiff/appellant in dividing the assets and liabilities of the parties."

Appellant argues that the trial court's property division was an abuse of discretion, especially in light of the fact that it divided appellant's pension (and appellant's sole source of income) "by a flat formula without considering the allocation of debt or the division of other assets of the marriage."

An appellate court will not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court's property

---

2. The record shows that when he was six years old, the older son was first diagnosed as paranoid schizophrenic and later as having paranoid schizothymia. Appellee testified that their older son was insecure and that "it would be best for him to stay [in the house] until he [would] graduate from high school."

division amounts to an abuse of discretion. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 222, 9 OBR 529, 531, 459 N.E.2d 896, 898. An abuse of discretion is more than an error of law or judgment and implies that the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

The trial court has wide latitude in determining a division of marital assets and liabilities, and periodic payments for sustenance and support, the two components of alimony. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 95, 518 N.E.2d 1197, 1200. Although an equal division is the starting point, the division need not be equal in order to be equitable. In addition, unequal property division, in and of itself, does not constitute an abuse of discretion. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 353, 20 O.O.3d 318, 321, 421 N.E.2d 1293, 1297. The limitation is that the trial court must consider the factors set forth in R.C. 3105.171(F).

The record shows that the trial court awarded each party his or her car. Unlike appellant's 1986 GMC van, which is paid for, there is a $7,000 balance on appellee's 1994 Pontiac Sunbird. The trial court also awarded appellant the bulk of the household goods and let him and the parties' minor sons reside in the marital home until September 30, 1996 or until the youngest child graduates from high school, whichever occurs first. The trial court ordered appellant to sell the house at the expiration of the foregoing time period. After payment of sale expenses, the net proceeds are to be divided as follows: after appellant receives the first $11,000 (appellant has an $11,000 nonmarital interest in the house), the balance of the net proceeds are to be equally divided between the parties.

The trial court found that each party had a pension. The court valued the marital portion of appellee's pension at $3,142.08 and awarded appellee the entire interest in her pension as a setoff against appellant's receipt of the bulk of the household goods and furnishings. With regard to appellant's pension and its supplement, the trial court valued the marital portion of appellant's pension as $149,812.06 and the marital portion of appellant's supplemental pension as $8,489.08. The trial court equally divided the marital portion of appellant's pension and its supplement between the two parties.

With regard to debts, the trial court ordered appellee to pay a $5,500 Visa debt which was found to be hers. The trial court, in turn, ordered appellant to pay a $2,400 Sears debt (incurred to buy appliances during the marriage which appellant is keeping), a $200 J.C. Penney debt (incurred to buy children's clothes), a $1,600 Visa debt (incurred to buy a new engine and a new transmission for appellant's car), a $150 McAlpin's debt (incurred to buy children's clothes), and a $600 Goodyear debt (incurred to buy tires for appellant's car and tires and a battery for the parties' daughter's car).

After reviewing the record, we find that the trial court properly and carefully divided the parties' marital assets and that in doing so, it considered all the factors set forth in R.C. 3105.171(F). We further find that the trial court's property division was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. Appellant's third assignment of error is overruled.

The judgment is affirmed in part and reversed in part and the cause is remanded for further proceedings according to law and not inconsistent with this opinion.

*Judgment accordingly.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.