OPINION
Defendant-appellant, Jonathan P. Wilson, appeals a Butler County Court of Common Pleas decision granting plaintiff-appellee, Terri R. Wilson, residential parent status of the parties' minor children for school purposes, ordering appellant to pay child support, and dividing the parties' marital assets. For the reasons that follow, we affirm the decision of the trial court.
Jonathan and Terri were married on December 6, 1991. Two children were born as issue of their marriage: Samantha, who is seven years old, and Phillip, who is five years old. Terri filed a complaint for divorce on August 29, 1997. Jonathan and Terri agreed to a shared parenting plan which alternated residential parent status weekly. However, Jonathan and Terri could not agree as to which of them should be designated the residential parent for school purposes.
At a hearing before the trial court, Jonathan testified that he wanted the children to maintain their current residence in West Chester, which is within the Lakota School District. Jonathan believed that he could afford to keep the marital home if he consolidated its first and second mortgages and refinanced. The home was valued at $220,000 and the mortgages on it were approximately $117,000. Jonathan hoped to continue to reside in the marital home because it was close to the children's friends and had a large yard, a pond, and a basketball court. Jonathan also appreciated the fact that the home was located between Cincinnati and Dayton, because he worked in both cities.
Terri testified that she wanted to take the children and move to the Oak Hills School District in Hamilton County. Terri had lived in this area when she was a child and her friends and family still resided there. Terri stated that Oak Hills School District was located in a small community and that Oak Hills students had strong test scores. Terri planned on temporarily moving to a condominium owned by her father, where she and the children would live until she could save money to make a down payment on a condominium or apartment.
Terri testified that she had originally moved to West Chester so that Jonathan would be closer to his job. During the marriage, Terri had chosen to work less hours each week, and earned $5,000 less per year, so that she could spend more time with the children. Whenever the children had been ill, Terri had taken them to the doctor's office. Terri had researched new day care arrangements and had already taken the children to a day care center in the Oak Hills area.
In a decision dated March 27, 1998, the trial court found that it was in the best interest of the children for Terri to determine the children's school district. Unconvinced that Jonathan could afford to maintain the marital residence and pay his share of the marital debt, the trial court ordered the marital residence to be sold and a debt owed to Terri's father in the amount of $5,700 to be paid from the sale proceeds. Any balance remaining was to be divided equally between the parties. Jonathan was allowed to remain in the marital residence for ninety days for the purpose of arranging for the sale of the home. During such time, Jonathan would be responsible for payment of the mortgage, utilities, maintenance, and insurance of the home. The trial court stated that if Jonathan was unable to sell the house within ninety days, he must vacate the home. Thereafter, Terri would be responsible for selling the home and paying the expenses.
The trial court determined that Jonathan's salary in 1997 was approximately $66,300 and that Terri's salary in 1997 was approximately $41,600. After completing the child support calculation worksheet, the trial court ordered Jonathan to pay $433 per week for child support. This amount included a fifty-percent reduction in Jonathan's obligation, which the trial court made in consideration of the fact that the parties were to spend equal time with their children.
By entry dated July 21, 1998, the parties were granted a divorce. The trial court allocated between the parties the few assets and liabilities that had not been divided by agreement. The parties were ordered to keep the vehicle that each respectively possessed. Jonathan was ordered to pay the balance on an Advanta Visa account and Terri was ordered to pay the indebtedness she had incurred since the filing of the divorce. Jonathan was ordered to transfer to Terri a sum from his IRA to compensate for the difference between the parties' marital retirement benefits.[1] Each party was ordered to pay his or her attorney fees and one half of the costs of the action. Jonathan appealed, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN FAILING TO GRANT HIM RESIDENTIAL PARENT STATUS FOR SCHOOL PURPOSES OF THE CHILDREN OF THE MARRIAGE.
In his first assignment of error, Jonathan argues that the trial court abused its discretion when it failed to grant him residential parent status for school purposes. Jonathan asserts that he could provide proper parental care for the children with the least disruption to their lives and that in all other areas, he was equally as qualified as Terri.
In matters relating to the allocation of parental rights and responsibilities for the care of minor children, the trial court is vested with broad discretion. The trial court must consider the best interest of the children when making an allocation of parental rights. R.C. 3109.04(B) (1). When ascertaining the children's best interest, the trial court must consider the factors listed by R.C. 3109.04(F) (1) (a)-(j).[2] A trial court's decision regarding these issues is subject to reversal only upon a demonstration of an abuse of discretion. Masters v.Masters (1994), 69 Ohio St.3d 83, 85. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In this case, the trial court determined that it was in the best interest of the minor children to allow Terri to determine their school district. The trial court acknowledged that Terri had resided in Oak Hills and had friends and family in that area. Also, the trial court noted that the day care and schools in Oak Hills were conveniently located close to Terri and Jonathan's places of employment.
We find that there was competent, credible evidence supporting the trial court's decision to designate Terri as the residential parent for school purposes. Therefore, the trial court's decision was not an abuse of discretion, and the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN ORDERING THE APPELLANT TO PAY CHILD SUPPORT.
In his second assignment of error, Jonathan argues that the trial court abused its discretion when it ordered him to pay child support where the children were to be with each parent for equal amounts of time and where Jonathan was responsible for expenses that Terri would not incur.
When fashioning a child support order, a trial court must follow R.C. 3113.215. Rock v. Cabral (1993), 67 Ohio St.3d 108,110; Eickelberger v. Eickelberger (1994), 93 Ohio App.3d 221, 223. A trial court is vested with broad discretion in calculating child support awards; absent an abuse of discretion, the trial court's determination shall be upheld. Dunbar v. Dunbar (1994), 68 Ohio St.3d 369,371.
When determining the amount of child support to be paid by a party participating in shared parenting, a court, pursuant to R.C.3113.215(B) (6), may deviate from the amount of child support calculated by the child support worksheet, line twenty-four (the annual obligation), if it finds that such amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the children. Pauly v. Pauly (1997),80 Ohio St.3d 386, 389. The court must consider the extraordinary circumstances of the parents and other factors set forth in R.C.3113.215(B) (3) and may reduce the obligor's child support obligation accordingly. Id. This method does not mandate an automatic credit in all cases but allows a court to make a case-by-case analysis and to deviate when it finds that it is in the best interest of the children. Id. Even when parties share parenting equally, one party may be ordered to pay child support to the other. See Fallang v. Fallang (1996), 109 Ohio App.3d 543.
In this case, the trial court ordered Jonathan to pay $433 per month, an amount equal to fifty percent of the annual obligation as calculated on line twenty-four of the child support worksheet. A fifty percent reduction was ordered in light of the fact that Jonathan and Terri were to spend equal time with the children under the shared parenting plan. The trial court ordered Terri to pay $100 per month to provide medical insurance for the children. Each party was ordered to pay day care expenses for the children during the weeks when the children were in that party's care.
Jonathan insists that Terri's living expenses will be significantly less than his expenses and that he should not have a child support obligation. However, there is evidence that the two parties will have similar expenses. Terri testified that she and the children would live in her father's condominium only for a temporary period, and that she would move to an apartment or condominium of her own once she saved money for a security deposit. At that time, Terri will incur moving expenses. Also, Terri testified that she would pay her father rent while living in his condominium. The trial court also ordered Terri to assume responsibility for payments to maintain the residential home and arrangement of its sale if Jonathan was unable to sell the home within ninety days. Finally, although Jonathan's annual salary is almost $25,000 more than Terri's annual salary, Terri was not awarded any spousal support.
We find that there is competent, credible evidence to support the trial court's calculation of Jonathan's child support obligation. Therefore, the trial court did not abuse its discretion and the second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN DIVIDING THE ASSETS AND LIABILITIES OF THE PARTIES.
In his third assignment of error, Jonathan asserts that the trial court abused its discretion when dividing the assets and liabilities of the parties because it did not use an equal division of property as its starting point. R.C. 3105.171
provides for the equitable distribution of marital property. When making a division of marital property, the trial court shall consider all relevant factors, including those set forth in division R.C. 3105.171(F). See R.C. 3105.171(C) (1). R.C.3105.171(F) lists the following factors:
1. The duration of the marriage;
2. The assets and liabilities of the spouses;
 3. The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
4. The liquidity of the property to be distributed;
 5. The economic desirability of retaining intact an asset or an interest in an asset;
 6. The tax consequences of the property division upon the respective awards to be made to each spouse;
 7. The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of the property;
 8. Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 9. Any other factor that the court expressly finds to be relevant and equitable.
The trial court has wide latitude in dividing the marital assets and liabilities. McQuinn v. McQuinn (1996), 110 Ohio App.3d 296,303, citing Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,95. Although the starting point is an equal division of property, the division need not be equal to be equitable. McQuinn
at 303, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, 353. An appellate court reviewing a trial court's division of marital property is limited to determining whether, under the totality of the circumstances, the trial court abused its discretion. Bakerv. Baker (Apr. 7, 1997), Butler App. No. CA96-10-216, unreported, citing Cherry at 355.
Contrary to Jonathan's arguments, it appears that the trial court used an equal distribution of assets and liabilities as its starting point. The trial court ordered that the marital residence be sold and that the marital debt owed to Terri's father be paid from the proceeds of the sale. Any balance of the proceeds was to be divided equally between Jonathan and Terri. In the event that the proceeds did not satisfy the debt, each of the parties were to be responsible for payment of one-half of the outstanding debt. Jonathan was ordered to transfer to Terri a sum of $2,583 from his IRA to compensate for the difference between the parties' marital retirement benefits. Jonathan was ordered to repay his credit card debt, amounting to $3,000, whereas Terri was ordered to repay debts she had incurred since filing the divorce, which were about $4,000.
The only significant inequality in the division of assets regarded the parties' vehicles. Jonathan received a Hyundai worth $1,175 and Terri received a van worth $7,125. However, it was economically desirable to allow each party to retain a vehicle for his or her use, rather than sell both cars and divide the proceeds. See R.C. 3105.171(F) (5). Moreover, Jonathan testified that he was willing to allow Terri to keep the van. Considering the totality of circumstances in this case, we cannot say that the trial court's division of assets constituted an abuse of discretion. The third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] In addition, the trial court found that Terri should exclusively manage the children's educational account. Although Jonathan had managed this account during the marriage, the trial court found Terri's family had funded it and that no marital funds had been deposited in this account.
[2] R.C. 3109.04(F) (1) states the following:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
The wishes of the child's parents regarding his care;
 If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
The child's adjustment to his home, school, and community;
 The mental and physical health of all persons involved in the situation;
 The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 Whether either parent has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * * and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 Whether each parent has established a residence, or is planning to establish a residence, outside this state.