DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court, Juvenile Division, judgment that modified the child support obligation of Michael T. Hammer, defendant below and appellee herein.
 {¶ 2} Roxanna Corwin, plaintiff below and appellant herein, raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN NOT CONSIDERING DEFENDANT-APPELLEES [SIC] OTHER SOURCES *Page 2 
OF INCOME FOR CHILD SUPPORT PURPOSES."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN FAILING TO MAKE A FINDING OF VOLUNTARY UNEMPLOYMENT AND/OR VOLUNTARY UNDEREMPLOYMENT."
 {¶ 3} Appellant and appellee never married, but together had one child, born in 1991. In 1993, the trial court set appellee's weekly child support obligation at $74.75 per week. In 2002, the court increased his obligation to $489.28 per month. In early 2006, the Highland County Child Support Enforcement Agency administratively modified appellee's monthly child support obligation from $489.28 per month to $339.21 per month. Appellant appealed the modification.
 {¶ 4} On March 7, 2006, the hearing officer modified appellee's child support obligation to $265.62 per month. The hearing officer found that: (1) appellee, through no fault of his own, was laid off from his employment; (2) appellee accepted a severance package that paid him $1,476.08 every two weeks for a thirty week period (expiring on March 24, 2006), in addition to a $20,000 lump sum cash payment; (3) appellee does not possess any special skills that would warrant keeping his income at the same level prior to his termination of employment; and (4) appellee has the ability to find employment at a rate of pay comparable to a factory worker or laborer of comparable pay. The hearing officer imputed $16,000 annual income to appellee and also found that he receives $2,602.50 in annual dividends.
 {¶ 5} On March 21, 2006, appellant appealed the hearing officer's decision and claimed that (1) appellee did not disclose all of his assets, and (2) he is voluntarily underemployed or unemployed.
 {¶ 6} On November 7, 2006, the trial court held a hearing. The exhibits reveal *Page 3 
that appellee received two distributions ($206,064.97 and $13,922.17) from his mother's estate. This included 2,200 shares of Procter and Gamble Company (PG) common stock. At the hearing, appellee testified that in 2006, he had been cashing in approximately 100 shares of PG stock each month. The exhibits also revealed that since 2001, appellee had been cashing in various amounts of PG stock, receiving annual income ranging from $6,812 to $32,373.[1]
 {¶ 7} The trial court adopted the hearing officer's decision and appellant requested findings of fact and conclusions of law. The court subsequently issued its findings of fact and conclusions of law and found that: (1) appellee worked at Xerox for twenty-one years when it implemented a voluntary reduction in work-force; (2) appellee is color blind and he could not gain other employment at Xerox for this reason; (3) appellee's 2005 tax return showed income of $58,577, which included the $20,000 severance bonus; and (4) in the years 2001-2004, his income ranged from $34,000 to $37,114. The court imputed $16,000 annual income to appellee and $2,602.50 as *Page 4 
dividend income and adopted the hearing officer's decision to modify appellee's monthly child support obligation to $265.62. This appeal followed.
 I {¶ 8} In her first assignment of error, appellant asserts that the trial court abused its discretion by failing to consider other sources of appellee's income when it calculated his child support obligation. She contends that the court should have considered the value of his inherited shares of stock, valued at $206,064.97, an additional estate distribution of $13,922.17, and the $20,000 lump sum severance payment that he received. She observes that the evidence shows that during the years 2001 to 2005, appellee sold shares of stock and received amounts ranging from $6,812 to $32,373.
 {¶ 9} We review child-support matters under an abuse-of-discretion standard. See, e.g., Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. An abuse of discretion "connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse-of-discretion standard of review, appellate courts must not substitute their judgment for that of the trial courts. See, e.g.,In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181. Furthermore, an appellate court must presume that the findings of the trial court are correct because the finder of fact is best able to observe the witnesses and to use those observations to weigh witness credibility. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273; see, also, Mahlerwein v. Mahlerwein160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, at]}19.
 {¶ 10} R.C. 3119.022 governs the procedure for awarding and calculating child *Page 5 
support. The statute's overriding concern is to ensure the best interest of the child for whom support is being awarded. Rock v. Cabral (1993),67 Ohio St.3d 108, 110, 616 N.E.2d 218. Thus, the statute's provisions are mandatory in nature and courts must follow the statute literally and technically in all material aspects. Marker v. Grimm (1992),65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus; see, also,Albright v. Albright, Lawrence App. No. 06CA35, 2007-Ohio-3709, at ¶ 7. If a trial court makes the proper calculations on the applicable worksheet, the amount shown is "rebuttably presumed" to be the correct amount of child support due. See Rock, 67 Ohio St.3d at 110;Albright; see, also, R.C. 3119.03.
 {¶ 11} In calculating child support, the trial court's starting point is the obligor's "income." See Murray v. Murray (1999),128 Ohio App.3d 662, 666, 716 N.E.2d 288. "R.C. 3119.01(C)(5) defines income in two ways. For individuals employed to full capacity, income means `the gross income of the parent.' R.C. 3119.01(C)(5)(a). If an individual is fully employed, the definition of `gross income' in R.C. 3119.01(C)(7) applies. For persons who are unemployed or underemployed, income means the parent's gross income plus any potential income. R.C.3119.01(C)(5)(b). In the latter situation, R.C. 3119.01(C)(11) provides methods of imputing potential income to the individual who is underemployed." Howell v. Howell, 167 Ohio App.3d 431, 2006-Ohio-3038,855 N.E.2d 533, at]}48.
 {¶ 12} In the case at bar, because appellee is not currently employed, the trial court considered appellee's gross income plus his potential income. R.C. 3119.01(C)(7) broadly defines gross income to mean:
 * * [T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to *Page 6 
the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source.
 {¶ 13} R.C. 3119.01(C)(1) defines "potential income" as follows:
 "Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:
 Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
 {¶ 14} The parent's prior employment experience;
 (ii) The parent's education;
 (iii) The parent's physical and mental disabilities, if any;
 (iv) The availability of employment in the geographic area in which the parent resides;
 (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 (vi) The parent's special skills and training;
 (vii) Whether there is evidence that the parent has the ability to earn the imputed income; *Page 7 
 (viii) The age and special needs of the child for whom child support is being calculated under this section;
 (ix) The parent's increased earning capacity because of experience;
 (x) Any other relevant factor.
 (b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.
 {¶ 15} Thus, "[t]he statutory definition of income is very broad and includes * * * potential cash flow from any source. This is consistent with R.C. 3103.03(A), which requires a biological or adoptive parent of minor children to support the children `out of the parent's property or by the parent's labor.'" Howell, at¶ 50. "The definition of `income' is intended to be both broad and flexible. See, e.g., Williams v.Williams (1991), 74 Ohio App.3d 838, 843, 600 N.E.2d 739, 742-743. An expansive definition is necessary `to ensure that the best interests of children, the intended beneficiaries of child support awards, are protected.' McQuinn v. McQuinn (1996), 110 Ohio App.3d 296, 300-301,673 N.E.2d 1384, 1387." Murray v. Murray (1999), 128 Ohio App.3d 662,666-668, 716 N.E.2d 288 (unexercised stock options are potential cash flow and should be included in gross income); see, also, Sizemore v.Sizemore (Oct. 14, 1994), Montgomery App. No. 13673 (non-income-producing asset may be considered potential cash flow and is properly included in gross income).
 {¶ 16} In the instant case, we believe that the trial court did not consider all sources of appellee's income when it calculated his child support obligation. Although the court considered the annual dividends he receives from his stock holdings, it *Page 8 
apparently did not consider the income that he receives from the sale of shares of his stock. Moreover, it is not clear that the trial court considered appellee's lump sum severance payment or his additional estate distribution. See Kerbyson v. Kerbyson, Washington App. No. 03CA56, 2004-Ohi0-3607, at ¶ 6 (stating that "[t]he provisions of R.C.3109.01(C)(7) expressly include `severance pay' within the definition of `gross income' for the purposes of calculating child support");Howell (concluding that potential investment income from inheritance must be included when calculating child support).
 {¶ 17} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's first assignment of error.
 II {¶ 18} In her second assignment of error, appellant contends that the trial court abused its discretion by failing to find that appellee was voluntarily unemployed and/or underemployed.
 {¶ 19} Before a trial court may impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed.Inscoe v. Inscoe (1997), 121 Ohio App.3d 396, 424, 700 N.E.2d 70, citingRock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus. " * * *[W]hether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." Rock, 67 Ohio St.3d at 112.
 {¶ 20} In the case at bar, the trial court imputed income to appellee. To impute income to appellee, the trial court necessarily must have found that he was voluntarily unemployed or underemployed. See, generally, Ramskogler v. Falkner, Summit App. No. 22886, 2006-Ohio-1556, at¶ 13. Therefore, even though the trial court did not *Page 9 
explicitly find appellee to be voluntarily unemployed, it implicitly did. Consequently, appellant's second assignment of error lacks merit.
 {¶ 21} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error. Therefore, we hereby affirm in part and reverse in part the trial court's judgment and remand the case for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part and the cause be remanded for further proceedings. Appellant and appellee shall equally divide the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion.
[1] Appellee's 2005 income tax return shows: (1) wages of $58,577; (2) ordinary dividends of $3,199; and (3) capital gains of $2,564. His total income was reported to be $64,340. Schedule D showed that he sold 320 shares of Procter and Gamble stock in 2005 for $17,284.
Appellee's 2004 income tax return shows: (1) wages of $36,065; (2) ordinary dividends of $2,962; and (3) capital gains of $3,393, for a total income of $42,460. Schedule D showed that appellee sold 365 shares of Procter and Gamble stock during 2004 for a total of $32,373.
Appellee's 2003 income tax return showed: (1) wages of $37,114; (2) ordinary dividends of $2,884; and (3) capital loss of $834, for a total income of $39,309. Schedule D showed that he sold 100 shares of PG stock during the year 2003 for a total of $8,991.
Appellee's 2002 income tax return showed: (1) wages of $34,504; (2) ordinary dividends of $2,817; and (3) a capital loss of $3,000, for total income of $34,433. Schedule D showed that he sold 282 shares of PG stock during 2002 for $22,324.
Appellee's 2001 tax return showed: (1) wages of $34,380; (2) ordinary dividends of $2,964; and (3) a capital loss of $2,388, for a total income of $35,514. Schedule D showed that he sold 100 shares of PG stock during 2001 for a total of $6,812. *Page 1