SNYDER, APPELLANT AND CROSS-APPELLEE, *v.* SNYDER, APPELLEE AND CROSS-APPELLANT.

(Nos. 49050 and 49059—Decided July 1, 1985.)

*Gary B. Garson,* for appellant and cross-appellee.

*Jules Markowitz,* for appellee and cross-appellant.

JACKSON, P.J. Ellen and Robert Snyder were married in 1973. Two children were born as a result of said marriage: a son Brian in 1977, and a daughter Erin in 1980. Ellen and Robert entered into a separation agreement on February 28, 1983. The following day, they petitioned the court for dissolution of their marriage. The terms of the separation agreement were approved, and the marriage was dissolved by court order on April 28, 1983.

The parties agreed that Ellen would have custody of the children, subject to visitation privileges allowed to Robert. Robert agreed to pay $2,000 per month as "unitary unallocated separate maintenance and support for the Wife and their minor children," until March 1, 1987 or until Ellen remarried or cohabited, at which point Robert would pay child support of only $100 per week per minor child.

At the time of the dissolution, Robert was employed as a steel salesman for the Comet Steel Co., a business enterprise operated by Ellen's father. Robert's employment with Comet was expected to continue as before. The separation agreement signed by Ellen and Robert provided:

"'* * * that the basis for determination of the dollar amount of unitary support is the present earnings of Husband by reason of his employment at Comet Steel Co. Husband has concurrently

1

with the execution of this Agreement entered into an Employment Agreement with Comet Steel Co., describing in detail his earnings and fringe benefits. In the event there is a decrease in Husband's earnings and fringe benefits during the period that he is obligated to make unitary unallocated separate maintenance and support payments to the Wife, Husband may apply to the Court for a reduction in said payments."

On the July 4th weekend in 1983, a dispute over visitation gave rise to an angry confrontation between Robert and members of Ellen's family. Afterwards, the working relationship between Ellen's father and Robert deteriorated rapidly. On August 5, 1983, Robert was either fired or quit Comet Steel.

Robert immediately went into business on his own as B&E Steel, Inc. On August 9, 1983, he filed a motion to modify support. Robert alleged that he had undergone a substantial reduction in income, and was therefore unable to continue paying support at the agreed-upon rate. Ellen responded with motions to show cause and for attorney fees. In November 1983, Ellen remarried, triggering the agreed reduction in Robert's support obligation.

The motions were heard by a domestic relations referee on May 31, 1984. The referee made the following recommendations:

"(1) That the motion to modify child support be granted, and that Robert's child support obligation be reduced from $100 per week per minor child to $65 per week per minor child, retroactive to August 9, 1983;

"(2) that Robert be ordered to pay an additional $35 per week toward a total arrearage of $6,990; and

"(3) that the request for attorney fees be denied, because both parties were financially able to pay their own attorney fees."

Objections to the referee's report were filed by both parties, and were overruled by the trial court, which approved the recommendations of the referee. Both parties appealed to this court.

Appellant and cross-appellee Ellen Snyder Weiner presents three assignments of error.

I

"The modification of support by the trial court was contrary to the weight of the evidence and contrary to applicable law."

In assessing a motion for modification of child support, a trial court must make a two-step determination: (1) whether there has been a change of circumstances; and (2) if so, a redetermination of the amount of child support needed. *Cheek* v. *Cheek* (1982), 2 Ohio App. 3d 86. There is no dispute regarding the first prong of the test in the case at bar. Ellen concedes that circumstances have changed. The remaining question, then, is whether that change in circumstances justified or necessitated the modification of child support ordered by the court below. Analysis of this second prong involves the application of R.C. 3109.05(A). *Cheek, supra.*

R.C. 3109.05(A) provides, in part:

"* * * In determining the amount reasonable or necessary for child support, including the medical needs of the child, the court shall consider all relevant factors including:

"(1) The financial resources of the child;

"(2) *The financial resources and needs of the custodial parent and of the noncustodial parent,* when there is only one custodian;

"(3) The standard of living the child would have enjoyed had the marriage continued;

"(4) The physical and emotional condition of the child, and his educational needs;

"(5) The financial resources and needs of both parents, when there are joint custodians;

"(6) The educational needs of the child and the educational opportunities that would have been available to him had the circumstances requiring a court order for his support not arisen." (Emphasis added.)

The evidence presented below demonstrated that Robert had experienced a considerable diminution in income after leaving Comet Steel. Ellen, meanwhile, remarried; the evidence indicated that her new husband enjoys considerable income and financial resources. Nevertheless, Ellen argues that no reduction in Robert's support obligation is warranted. She presents her argument in two parts.

First, Ellen contends that Robert's support obligation should not be reduced because, she suggests, he left Comet Steel of his own free will. Therefore, her argument goes, Robert should not be rewarded for making a voluntary and irresponsible decision to leave Comet Steel.

The evidence discloses some conflict concerning whether Robert resigned or was fired from Comet Steel. At the least, a fair evaluation of the evidence indicates that, after the July 4th incident, Robert was pressured to leave Comet. Therefore, his departure cannot be characterized as entirely voluntary. Cases such as *Fox* v. *Fox* (Jan. 28, 1982), Cuyahoga App. No. 43636, unreported, are inapposite.

Second, Ellen contends that the trial court erred in considering the income of her present husband. Ellen herself is not employed, and she argues that her spouse's income is irrelevant. We disagree.

It has been held that an increase in income brought about by the remarriage of the non-custodial parent is a factor to be considered in assessing the ability to pay child support. See *Martin* v. *Martin* (1980), 69 Ohio App. 2d 78 [23 O.O.3d 102]; *Pearson* v. *Pearson* (Dec. 23, 1982), Cuyahoga App. No. 44880, unreported. Similarly, the remarriage of the custodial parent may be considered in determining the need for child support.

Ellen's first assignment of error is overruled.

II

"The trial court erred in its computation of support arrearages and abused its discretion by its arbitrary determination of the method of payment for support of arrearages."

There is a discrepancy between the arrearage as calculated by the court and the arrearage as calculated by Ellen. We find the error to be contained in Ellen's calculations. She would charge Robert $800 per month in child support, despite the fact that the reduction (to $520 per month) was retroactive. This variance accounts for the discrepancy. The court did not err in its computation of arrearages.

The trial court's determination that $35 per week was a reasonable rate of repayment on the arrearage was not an abuse of discretion.

" 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, quoting *State* v. *Adams* (1980), 62 Ohio St. 2d 151 [16 O.O.3d 169].

Considering the circumstances involved in the instant case, this court cannot conclude that the trial court exhibited an unreasonable, arbitrary or unconscionable attitude in permitting a gradual payment of the arrearage.

Ellen's second assignment of error is overruled.

III

"The denial of appellant's motion for attorney fees was contrary to law and against the weight of the evidence."

The decision to award attorney fees and the amount thereof are within the discretion of the trial court. *Cassaro* v. *Cassaro* (1976), 50 Ohio App. 2d 368 [4 O.O.3d 320]. In the case at bar, the trial court declined to award attorney fees, and explained its reasoning for that decision. We find no abuse of discretion in the trial court's refusal to order an award of attorney fees.

Ellen points out the following language contained in the parties' separation agreement:

"XVII. ENFORCEMENT EXPENSES

"If either the Husband or the Wife defaults in the performance of any of the obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate performance of any provision of this Agreement, then in such case, the party found to be in default shall pay all expenses, including reasonable attorneys fees, incurred in connection with such enforcement proceedings."

The above contract clause, purporting to stipulate the payment of attorney fees in an action for breach of the agreement, is not enforceable under Ohio law. See *Driggs* v. *Credit Alliance Corp.* (N.D. Ohio 1984), 591 F. Supp. 1221, 1228 ("It is well settled that in Ohio any stipulation to pay attorney's fees as part of the costs of an action or an obligation is contrary to public policy." Citing *Miller* v. *Kyle* [1911], 85 Ohio St. 186); *AMF Inc.* v. *Computer Automation, Inc.* (S.D. Ohio 1983), 573 F. Supp. 924 at 933-934; *Federal Deposit Ins. Corp.* v. *Timbalier Towing Co.* (N.D. Ohio 1980), 497 F. Supp. 912, 929 ("Ohio likewise prohibits the enforcement of express agreements for recovery of attorney's fees for breach of a simple contract." Citing *Gates* v. *Toledo* [1897], 57 Ohio St. 105). See, also, 2 Speiser, Attorneys' Fees (1973) 293, Section 15:5.

Ellen's third assignment of error is overruled.

Robert likewise assigns three errors for review by this court.

## IV

"The trial court's failure to reduce spousal support when it reduced child support is an abuse of discretion and against the weight of the evidence."

Robert's child support obligation was reduced, retroactive to August 1983. Prior to Ellen's remarriage in November 1983, Robert was responsible for a $2,000 per month unitary support payment. This $2,000 figure was retroactively lessened by the $70 per week reduction in child support (from $100 per week per child to $65 per week per child).

We realize that, technically speaking, the support obligation prior to Ellen's remarriage was "unitary." However, the terms of the separation agreement invite a breakdown of $1,200 spousal support and $800 child support. Thus, Robert argues that when the trial court reduced the child support portion of the "unitary" support obligation, it should also have reduced the spousal support component.

While we might agree that a further reduction in Robert's support obligation prior to Ellen's remarriage could possibly be justified by the evidence, we cannot conclude that the trial court abused its discretion in declining to afford Robert additional relief.

Robert's first assignment of error is overruled.

## V

"The trial court abused its discretion by not further reducing child support payments in light of the amount of income reduction faced by Robert."

Robert complains that the reduction in child support ordered by the trial court does not correspond to the proportionate decrease in his income. In support of his argument, Robert cites this court's decision in *Page* v. *Page* (Apr. 14,

1983), Cuyahoga App. No. 45188, unreported. The *Page* case confirmed that the obligor's disposable income declined by seventeen percent, thus justifying an ordered seventeen percent decrease in alimony. However, it would be erroneous to interpret *Page* to require that a trial court has a duty to first determine the percentage of decline in income and then adjust the support obligation based on that same percentage. Such an interpretation of *Page* would be improper. A domestic relations court has broad equitable power to set the amount of support payments, basing its determination on the evidence and the relevant factors listed in the Revised Code and case law.

The evidence in the case at bar supports the modification of child support ordered by the trial court. This court therefore finds no abuse of discretion.

Robert's second assignment of error is overruled.

## VI

"Evidence of the value of the Weiner home and the value of the spousal income enjoyed by the Weiner marriage was relevant to the motion for modification and should have been admitted by the trial court."

At the hearing below, Robert attempted to introduce evidence that the home currently occupied by Ellen and her present husband is a more expensive house than the home formerly occupied by Robert and Ellen. The referee excluded that evidence as irrelevant, because Ellen had already offered the monthly expenses associated with the new house. Error, if any, in excluding the price of the house was harmless.

Evidence of the income of Ellen and her present husband *was* admitted.

Robert's third assignment of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

KRUPANSKY, J., concurs in judgment only.

PATTON, J., dissents.

PATTON, J., dissenting. I must respectfully dissent from the position reached by the majority in Ellen's third assignment of error. It is my considered opinion, as will be discussed more fully below, that the appellant's motion for attorney fees should have been granted.

The majority relies on *Cassaro* v. *Cassaro* (1976), 50 Ohio App. 2d 368 [4 O.O.3d 320], to support the contention that the decision to award attorney fees and the amount thereof are within the discretion of the trial court. However, this applies only during *divorce* proceedings. See *Cassaro, supra,* and *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85 [2 O.O.3d 65]. If the case *sub judice* had been a divorce proceeding, then I would be in agreement with the majority.

In contrast, the case at bar involved a *dissolution.* Therefore, the separation agreement provides the proper procedure to follow with regard to attorney fees. Since a trial court does not have jurisdiction to modify periodic alimony payments contained in a dissolution of marriage decree, it seems logical to extend that lack of jurisdiction to the matter of attorney fees within this dissolution decree *absent fraud* or *duress.*

The majority attempts to create an analogy by renaming the dissolution decree a contract and then applying federal contract law. However, both federal cases cited, although applying Ohio law, involved contracts between corporations for either computer equipment (*AMF Inc.* v. *Computer Automation, Inc.* [S.D. Ohio 1983], 573 F. Supp. 924) or chattel paper (*Driggs* v. *Credit Alliance Corp.* [N.D. Ohio 1984], 591 F. Supp. 1221). Neither case can be used realistically to draw an analogy to proceedings held involving a dissolution

agreement. Furthermore, assuming, *arguendo,* we do not distinguish between a divorce and a dissolution, the majority's contract analogy is still incorrect. In *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474], the Ohio Supreme Court stated in paragraph four of its syllabus:

"A separation agreement of the parties loses its nature as a contract the moment it is adopted by the court and incorporated into a decree of divorce. (*Law* v. *Law,* 64 Ohio St. 369; *Newman* v. *Newman,* 161 Ohio St. 247 [53 O.O. 135], and *Mozden* v. *Mozden,* 162 Ohio St. 169 [55 O.O. 4], modified.)"

Therefore, since a dissolution agreement is also adopted by the court, it would be logical to assume that if it were a contract, it too would lose its nature as a contract the moment it is adopted by the court.

Accordingly, appellant's third assignment of error is well-taken.

Judgment should be reversed and remanded to determine attorney fees.