**WILLIAMS, Appellant,**

**v.**

**WILLIAMS, Appellee.**

[Cite as *Williams v. Williams* (1991), 74 Ohio App.3d 838.]

Court of Appeals of Ohio,
Scioto County.

No. 90–CA–1921.

Decided July 19, 1991.

*Deanna L. Dennison* and *Daniel F. Burke,* for appellant.
*John W. Thatcher,* for appellee.

HARSHA, Judge.

This is an appeal from a judgment of the Scioto County Court of Common Pleas overruling appellant's objections to a referee's report and recommendations. Appellant's main objection was to that portion of the referee's report that recommended that appellee's child support obligation be reduced from $128.86 per week to $28 plus two percent poundage per week. The court adopted the referee's report in a judgment entry and appellant filed timely objections. The court overruled the objections and appellant brought this appeal. Appellant's brief fails to comply with the dictates of App.R. 16 in several respects, including the failure to set forth an assignment of error for review. However, after reviewing appellant's brief and the statement of the "issues" therein, it is apparent that appellant asserts the following assignment of error:

"The trial court erred as a matter of law in determining appellee's income and accordingly finding a substantial change in circumstances justifying reduction of child support had occurred."

Appellant asserts that the court improperly failed to consider the standard of living the children would have enjoyed had the marriage continued as well as the financial resources and needs of the residential and non-residential parents.

The parties to this action were granted a final divorce on December 15, 1987. At or near the time of the final decree, appellee was ordered to pay child support in the amount of $128.86 plus two percent poundage per week. On March 27, 1989, appellee filed a motion for modification of the support order. This motion alleged appellee's annual income had substantially decreased. As appellant moved to Florida, her testimony was taken by deposi-

tion for use at the hearing. On November 1, 1989, appellant filed a cross-motion for modification of support seeking an increase in appellee's obligation. This motion alleged increased transportation and child care costs as the substantial change in circumstances justifying modification. The motion also sought an order requiring appellee to promptly reimburse appellant for one-half the costs of airfare for the children's visitation in Ohio.

A hearing was held at which appellee and appellee's certified public accountant testified. Additionally, appellant's deposition was submitted to the court. After considering the testimony, the referee issued a report recommending that appellee's support obligation be reduced to $28 plus two percent poundage per week. It also recommended that appellee be ordered to pay fifty percent of the costs of the children's airfare within ten days of his receipt of the bills from appellant. In a decision and separate judgment entry on December 13, 1989, the court adopted the referee's report and recommendations. Appellant filed timely objections to the report. On June 22, 1990, appellee filed a memorandum opposing appellant's objections. This memorandum alleged that appellant had failed to support her objections to the referee's factual findings with a transcript or affidavit as required by Civ.R. 53(E). The court overruled the objections and appellant brought this appeal from that judgment.

Appellee's testimony at the hearing revealed that at the time of the divorce, a corporation (appellee owned fifty percent of the stock) was paying him a salary of approximately $12,000 per year. Two to three years prior to the hearing, appellee quit taking a salary from the corporation. He has received $200 per week from the corporation since that time. This money was installment payments of both principal and interest on loans appellee made to the corporation. In 1988, approximately $5,300 of the money the corporation paid appellee was for interest on the loans. The remainder of the money was repayment of the principal. Appellee testified that the right to receive payments on these loans was a marital asset that was awarded to him as part of the property distribution at the time of the divorce.

Appellee claimed he was using the repayment of principal on the loans to pay his support obligation. He was building a house but was unable to complete it due to lack of funds. Other than a sofa and bedroom suite, appellee had been unable to furnish the house for the same reason. Appellee currently lives in the home of a female friend. She provides his meals at no cost. His expenses include $10 per week for gasoline and $300 per year for car insurance. He has had no clothing expenses for two to three years. The corporation provides his health insurance policy, under which the children are also covered. Appellee owns the house under construction, a ten-year-old

Porsche and a twelve-year-old Ford pickup truck, free and clear of encumbrances. He further claims that he has no bank accounts and hasn't had any for two to three years.

Appellant called Jeff Dever as her witness at the hearing. Dever is a certified public accountant who does work for appellee's corporation. He testified that appellee owned fifty percent of the stock of the corporation. At the close of 1988, the corporation had total assets of $358,019.48, total liabilities of $123,818.52 and total shareholders' equity of $176,992.64. At the end of the previous year, the shareholders' equity was $101,754.61.

Dever also testified that the only taxable income appellee receives from the corporation is the interest payments made by the corporation. At the time of the divorce, appellee was receiving a salary, but he no longer does. Dever testified that the decision for appellee to stop taking a salary was made upon Dever's recommendation in order to avoid taxable income. He further indicated that to the best of his knowledge, appellee could take a salary any time he wanted to do so. However, if he did so, the corporation would be forced to stop repayment of the loans made by appellee.

Appellant's deposition testimony revealed that at the time the parties were divorced, she was earning $14,000 per year. In April 1989, she and the children moved to Florida. She is currently employed there, earning $23,000 per year. She also earns interest on $7,000 she has deposited in a bank. The majority of her testimony related to her living expenses and those of the children. This included testimony that her move to Florida had subjected her to a higher standard of living.

In assessing a motion for modification of child support, a court must employ a two-step process. First, it must determine whether the continuing jurisdiction of the court *can* be employed to modify the child support order. *Bahgat v. Bahgat* (1982), 8 Ohio App.3d 291, 293, 8 OBR 386, 387, 456 N.E.2d 1239, 1241. This requires a determination of whether there has been a sufficient change in circumstances since the filing of the prior order. *Id.* See, also, *Boltz v. Boltz* (1986), 31 Ohio App.3d 214, 215, 31 OBR 484, 484, 509 N.E.2d 1274, 1275; *Snyder v. Snyder* (1985), 27 Ohio App.3d 1, 2, 27 OBR 1, 2, 499 N.E.2d 320, 321. Second, the court must redetermine the amount of support appropriate under the changed circumstances. *Id.* at 2, 27 OBR at 2, 499 N.E.2d at 321. However, if it is found that a sufficient change in circumstances has not occurred, then the inquiry ends there. *Bahgat, supra,* 8 Ohio App.3d at 293, 8 OBR at 387, 456 N.E.2d at 1241; *Boltz, supra,* 31 Ohio App.3d at 216, 31 OBR at 486, 509 N.E.2d at 1275. A reviewing court will not reverse a trial court's judgment based on either of these steps unless the party asserting error can demonstrate that the trial court abused its

discretion. See *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030. An "abuse of discretion" is present when the court's judgment is unreasonable, arbitrary or unconscionable. *Id.*

There are two changes in circumstance potentially justifying some modification (decrease) of the support order herein: First, the substantial decrease in the non-residential parent's salary, and second, the substantial increase in the residential parent's income. A review of such financial conditions is the normal method of determining whether a substantial change in circumstances has occurred, thus satisfying the threshold requirement. *Bahgat, supra,* 8 Ohio App.3d at 293, 8 OBR at 387, 456 N.E.2d at 1241.

Initially, we assess appellee's financial condition to determine whether a substantial change in circumstances has occurred. For the purpose of determining a child support amount, "income" is defined in C.P.Sup.R. 75(III)(A)[1] as follows:

"(1) Income. For purposes of these Guidelines, 'income' is defined as actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed.

"* * *

"(2) Gross Income. Gross income includes income from any source, earned or unearned, except as excluded below, and includes, but is not limited to, income from salaries, wages, overtime, commissions, royalties, tips, bonuses, rents, dividends, severance pay, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support actually received from a person not a party to the order.

"* * *

"(3) Income from self-employment or operation of a business, income from rental property, passive income, *or potential cash flow from any source. For income from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, or rents, gross income is defined as gross receipts minus ordinary and necessary expenses incurred in generating such income.*

"Specifically excluded from ordinary and necessary expenses for purposes of these Guidelines are amounts for depreciation expenses or other noncash deductible items allowable by the Internal Revenue Service. *In general,*

---

1. C.P.Sup.R. 75 was repealed when R.C. 3113.215 went into effect. For our purposes, the differences between the rule and the statute are negligible. Upon review, we must apply the rule as it was in effect at the time of filing of the judgment from which this appeal was taken. Obviously in the future, the statute would apply.

*income and expenses referenced herein should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation.* This amount may differ from a determination of business income for tax purposes.

" * * *

"(4) Potential income. *If a parent is voluntarily* unemployed or *underemployed, child support may be calculated based on a determination of potential income. It is within the trial court's discretion whether to impute income on a case-by-case basis.* If the trial court should decide to impute income, then it should determine employment potential and probable earnings level based on the obligor's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community.

"*In addition to determination of potential earnings, income may be imputed to any non-income producing assets of either parent, if significant.* The current rate for long-term treasury bills, or another appropriate rate determined by the court, is the rate at which income should be imputed to such non-performing assets." (Emphasis added.)

 It is apparent from the foregoing definition that "income" for purposes of child support computation is sufficiently broad to include the retained earnings of appellee's corporation. The corporation's accountant testified that the $75,000 increase in shareholder's equity was corporate income. As appellee was the owner of fifty percent of the corporation's stock, the value of his stock increased approximately $37,500. Additionally, the accountant testified that the corporation used the money in its "cash" account to increase corporate assets and decrease corporate liabilities. Under these circumstances and in light of the expansive definition of "income" above, it would be grossly inequitable to allow appellee to sit upon his assets, hide behind the shield of corporate business decisions, and prevent his children from enjoying the standard of living they would have enjoyed had the marriage continued. Under such circumstances, it was unreasonable for the trial court not to consider the retained earnings of the corporation when ruling upon the motion to modify the support order; such action constituted an abuse of the court's discretion.

 It has been held that the duty of a parent to support his or her children is "tied to the parent's ability or inability to provide such support." See *Boltz, supra,* 31 Ohio App.3d at 216, 31 OBR at 486, 509 N.E.2d at 1275, and the cases cited therein. Accordingly, a decrease in income is only pertinent to a motion for modification of child support insofar as that decrease affects the parent's ability to provide support. In *Boltz, supra,* the Ninth

District Court of Appeals held that a voluntary termination of the non-residential parent's employment at the request of her new spouse did not constitute an inability to support her children. *Id.* at 216, 31 OBR at 486, 509 N.E.2d at 1276. Thus, the threshold requirement had not been met and modification of the support award on such basis was inappropriate. *Id.* Cf. *Snyder, supra,* 27 Ohio App.3d at 3, 27 OBR at 3, 499 N.E.2d at 322, wherein it was not shown that the father's pay cut was voluntary as alleged by the mother in an attempt to have a modification set aside. These rulings reflect the definition of "potential income," *supra.* In such cases, it is within the court's discretion to impute income to the unemployed/underemployed parent. C.P.Sup.R. 75(III)(A)(4).

The evidence in the case *sub judice* revealed that the substantial decrease in appellee's salary was the result of a voluntary business decision on his part. He discontinued his salary for tax benefits. Further, at any time he desired, he could recommence the salary payments. Finally, the cash flow from the corporation to appellee was not substantially decreased. Under these circumstances, appellee's ability to support his children has not been affected by his decreased salary. Accordingly, any reduction in child support attributable to appellee's decreased salary is not justified. It was an abuse of discretion for the trial court not to impute income to appellee under such circumstances.

The second potential change in circumstances is the increase in income to appellant. The record reveals that appellant attempted to show that her ability to support the children was not increased when her income increased. She attempted to demonstrate this by showing she had incurred increased expenses at the same time her income increased. The record before us does not reveal the extent by which, if any, the trial court reduced the child support based upon appellant's increased income. It appears that the reduction may have been based upon the changes in salary of both appellee and appellant. Because the record provides no method of determining the portion of the reduction attributable to each alleged change in circumstances and does not include child support computation worksheets, we must remand this cause for a redetermination of the modified support award.

Accordingly, the judgment of the trial court is reversed and this action is remanded for further proceedings consistent with this decision and judgment entry.

*Judgment reversed.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.