DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from multiple Adams County Common Pleas Court judgments that modified the child support obligation of Roy Willman, defendant below and appellant herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE LOWER COURT ERRED IN INCLUDING APPELLANT'S 1999 SCHEDULE E INCOME, WHICH WAS RETAINED EARNINGS OF THE SUB-CHAPTER S CORPORATION, CEDAR WORKS, INC., AS INCOME FOR PURPOSES OF CHILD SUPPORT."
SECOND ASSIGNMENT OF ERROR:
 "THE LOWER COURT ERRED IN IMPUTING INTEREST ON APPELLANT'S 1999 NON-RECURRING CAPITAL GAIN OF $894,063.00 AT THE RATE OF 8%."
A brief summary of the facts pertinent to this appeal is as follows. Appellant and his ex-wife, Laura Cole, defendant below and appellee herein, married in Holdredge, Nebraska on May 26, 1978. Two children were born as issue of that marriage: Yarrow Willman-Cole (d/o/b 3-4-79) and Skyler Willman-Cole (d/o/b 9-5-85). On August 10, 1998, the parties filed a joint petition for dissolution of marriage together with an extensive "Shared Parenting Plan" and "Separation Agreement." The trial court granted the dissolution on September 15, 1998, and adopted their proposed settlement agreements.[1]
On March 7, 2000, a motion on behalf of appellee requested the court to increase appellant's child support obligation to an amount which was "commensurate with the Child Support Guidelines adopted by the State of Ohio."[2] The matter came on for hearing before a magistrate at which time appellee testified that she earned $18 per hour as a part time employee for "Therapeutic Associates." Her previous year's federal income tax return indicated that for the 1999 tax year she earned approximately $17,100. Her ex-husband, on the other hand, had a taxable income in excess of $1.25 million dollars. Appellant testified that he is an employee and shareholder of a sub-chapter S corporation known as "Cedar Works, Inc." Appellant's 1999 federal income tax return indicated that he received approximately $93,800 in wages from that company, and recognized a capital gain on sale of company stock in the amount of $894,063. Furthermore, appellant's tax return showed that his pro-rata share of the net income from Cedar Works, Inc. was $357,414. His accountant, David Cassidy, testified that this latter figure did not represent actual income to appellant, but was merely a pass-through of income from the sub-chapter S corporation. Mr. Cassidy stated that had the company been structured as a sub-chapter C corporation, appellant would never have recognized the income.
On July 27, 2000, the magistrate rendered his decision and ordered a modification of appellant's child support obligation. The magistrate found, inter alia, that while appellant's 1999 capital gain on the sale of stock could not be treated as recurring income, appellant would receive some return on those funds in the future and, consequently, interest at the rate of eight percent (8%) per annum should be imputed on that gain ($894,063) and be included in the worksheet calculations. Further, the magistrate determined that appellant's pro-rata share of net income from the sub-chapter S corporation should also be included on the worksheet for purposes of calculating his child support obligation. On July 31, 2000, the trial court adopted the magistrate's decision and entered judgment. Appellant's support obligation increased from $400 per month under the original shared parenting plan to more than $2,000 per month under the new calculations.
On August 8, 2000, appellant filed a request for findings of fact and conclusions of law.[3] The magistrate responded the next day with and an "amended" decision setting forth the reasons behind his ruling. On August 15, 2000, the trial court issued a judgment entry and adopted the amended decision. The magistrate filed a second amended decision on August 18, 2000, ostensibly to correct a typographical error and to include a finding inadvertently omitted from his first amended decision. Three days later, the trial court issued its judgment and adopted this decision as well.
Appellant filed his objections to the magistrate's decision on September 1, 2000.[4] He argued: (1) that the magistrate erred in computing his income by including his pro-rata share of the sub-chapter S corporation earnings; (2) erred by imputing interest income to him at the rate of eight percent (8%) per annum on his 1999 capital gain; and (3) erred by failing to impute additional income to his ex-wife in view of the fact that she was employed only part-time. Appellee filed a memorandum in opposition and both sides filed even more memoranda thereafter. Finally, on October 6, 2000, the trial court entered judgment and overruled appellant's objections regarding the computation of his own income. The court agreed, however, that additional income should have been imputed to appellee because she was not employed full-time. The trial court returned the matter to the magistrate for further proceedings on that issue.[5]
At the November 21, 2000 hearing, both sides essentially stipulated that additional income of $6,851 would be imputed to appellee. The magistrate filed a decision to that effect the following day. On November 28, 2000, the trial court adopted the magistrate's decision and implemented a revised child support calculation worksheet. Appellant filed his Notice of Appeal (Case No. 00CA707) and the matter is now before us for review.[6]
 I
Before we review the merits of the assigned errors, we must first address a threshold procedural problem raised in appellee's brief. Civ.R. 53(E)(3)(b) states that a party shall not assign as error on appeal the court's adoption of any of the magistrate's findings of fact or conclusions of law unless that party has previously filed objections. We note that the matters appellant raises in his two assignments of error were raised in his objections to the July 27, 2000 magistrate's decision, but were not raised in any further objections to subsequent magistrate's decisions (specifically, the one filed November 22, 2000, from which appellant took his second appeal). Appellee posits that appellant should have filed objections to the final magistrate's decision in order to preserve his right to have those matters reviewed on appeal. We are not persuaded.
The clear import of Civ.R. 53(E)(3)(b) is that objections to magistrate's decisions should be heard in the trial court before they are heard on appeal. Otherwise, any issue a party fails to raise through an objection will be deemed waived. We again note that in the case subjudice, appellant's arguments were raised, and passed on, by the trial court. We believe that appellant has sufficiently complied with Civ.R. 53. Appellant need not repeat those same objections in response to subsequent magistrate decisions. Thus, we conclude that appellant properly preserved for review these issues raised in his assignments of error. Consequently, we turn our attention to the merits of appellant's arguments.
 II
In his first assignment of error, appellant asserts that the trial court erred by including his pro-rata share of net earnings from the sub-chapter S corporation into the calculation of income for purposes of determining child support. We agree with appellant, albeit for slightly different reasons and not to the same extent as appellant argues in his brief.
Our review of the record reveals that Mr. Cassidy testified that appellant's pro-rata share of the sub-chapter S corporation earnings did not represent cash that the company distributed to him. This testimony is consistent with federal tax law which treats such corporations as pass-through entities and taxes corporate income at the shareholder level. See generally Bittker Eustice, Federal Taxation of Corporations and Shareholders (5th Ed. 1987) 6-14, ¶ 6.06[1]. Although appellant may have incurred tax liability on the income, that liability does not necessarily mean that any of the corporate earnings were distributed to appellant.
As the parties note, this issue has previously arisen. In Riepenhoffv. Riepenhoff (1990), 64 Ohio App.3d 135, 138, 580 N.E.2d 846, 848, we held that it was "highly inequitable" to include as income sub-chapter S earnings which, although taxed to the shareholder, were retained by the company and not distributed. Our holding was based, at least in part, on the premise that the child support obligor did not use the corporation as a "subterfuge" to avoid his support obligation. Id. at 140,580 N.E.2d at 849 (Harsha, J. Concurring). However, in Williams v. Williams (1991),74 Ohio App.3d 838, 843, 600 N.E.2d 739, 742-743 we held that the definition of "income" for purposes of the child support guidelines was sufficiently broad to include retained corporate earnings. Our Williams
holding was buttressed by the fact that the child support obligor was a fifty percent (50%) shareholder in the company and that he voluntarily reduced his salary to accumulate or shelter earnings in the corporation rather than to distribute the earnings and thus avoid his child support obligation. Id., 600 N.E.2d at 743. In short, this was the very sort of "subterfuge" we warned against in Riepenhoff.
At first glance, the results in these cases may appear to be at odds with one another. Upon closer examination of the facts, however, it is clear that the dispositive issue is not so much the presence of retained corporate earnings but the degree of control that the obligor exercises over the decision to distribute those earnings and whether the corporate entity is used as a device to shelter the income from the child support calculation. We note that other appellate districts have come to the same general conclusion. See e.g. Murray v. Murray (1999), 128 Ohio App.3d 662,668, 716 N.E.2d 288, 293 (citing Williams for the proposition that when the support obligor is a majority shareholder in a corporation, a trial court may, when determining child support, impute the retained earnings of a company; Kotoch v. Kotoch (Jul. 9, 1998), Cuyahoga App. No. 72919, unreported (courts may refuse to consider retained corporate earnings when insufficient evidence is adduced to show that the earnings were used as a scheme to avoid support); Emary v. Emary (Oct. 23, 1996), Lorain App. No. 96CA6353, unreported (although it may be inequitable to base child support on some retained business earnings which provide no disposable income to the parent, it is equally inequitable to permit a parent to reduce his personal income and resulting support obligation by leaving income in a privately held business).
Applying these principles to the cause sub judice, we find no evidence to indicate that appellant caused the corporation to retain its earnings rather than to distribute the earnings. Our review of the record reveals nothing to suggest that appellant used Cedar Works as a "subterfuge" to avoid his child support obligation. Indeed, the uncontroverted evidence established that prior to 1999, appellant owned only eighteen percent (18%) of the company. Appellant then sold forty percent (40%) of his stock in 1999 thereby reducing his control even further. Clearly, appellant did not possess the power or the authority to distribute earnings to himself as did the shareholder in Williams or the child support obligors in some of the other cases noted above. We therefore conclude that appellant's pro-rata share of the undistributed sub-chapter S corporate earnings should not have been included in the child support calculations.
This pronouncement does not end our inquiry, however. Evidence adduced during the trial court proceedings also established that some of those earnings were, in fact, distributed to appellant. "Defendant's Exhibit 1" indicates that Cedar Works distributed $409,570 to appellant in 1999. Of that amount, $215,508 was for tax reasons and $194,062 was for non-tax reasons. Mr. Cassidy explained that companies structured as a sub-chapter S corporation typically pay distributions to their shareholders so that shareholders have the resources to pay taxes on their pro-rata share of the company's income. On this issue, the trial court held that it was irrelevant whether the distributions were for tax or non-tax reasons; rather, the distributions should be counted for purposes of determining appellant's income. We agree with the trial court. These distributions provided appellant with disposable resources. Even to the extent they were used to pay taxes on the pass through corporate earnings, those funds freed up money that appellant would have otherwise had to use to pay taxes and can thus be considered for child support purposes. This view is consistent with our earlier holding that undistributed earnings of the corporation could not figure into the calculation. Obviously, these payments constitute the distribution of those earnings[7] and should be included in any calculation of income for purposes of determining child support.
To summarize, we agree with appellant that his pro-rata share of undistributed sub-chapter S earnings should not have been considered when the court computed his income. Appellant had no control over the company's decision to retain those funds and nothing in the record suggests that the decision was used as a subterfuge for him to avoid his child support obligation. Some of those earnings, however, were in fact distributed to appellant by Cedar Works (for tax purposes or non-tax purposes) and should be included as income for purposes of determining child support. Thus, we sustain appellant's first assignment of error and remand the case to the trial court for further proceedings on this issue.[8]
 III
In his second assignment of error, appellant asserts that the trial court erred by including in its income calculation eight percent (8%) imputed interest on his 1999 capital gain of $894,063. We agree.
In the trial court proceedings, both the magistrate and the trial court specified that they imputed interest on the capital gain pursuant to R.C.3113.215(A)(5)(b).[9] That statute provides in pertinent part:
 "`Potential income' means both of the following for a parent that the court . . . determines is voluntarily unemployed or underemployed:
* * *
 (b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate . . ."[10]
(Emphasis added.)
Courts may not impute potential income under this statute without first finding voluntary unemployment or voluntary underemployment. Inscoe v.Inscoe (1997), 121 Ohio App.3d 396, 424, 700 N.E.2d 70, 88; Leonard v.Erwin (1996), 111 Ohio App.3d 413, 417, 676 N.E.2d 552, 555. Unless the trial court makes a finding of voluntary unemployment or underemployment, the court may not impute income to a parent. Roberts v.Roberts (Jul. 24, 1998), Fulton App. No. F-97-027, unreported; Archer v.Archer (Sep. 24, 1997), Pickaway App. No. 96CA37, unreported; also seeFranke v. Franke (May 1, 1996), Highland App. No. 95CA879, unreported;Ritchart v. Phillips (Jul. 24, 1991), Ross App. No. 1725, unreported. It does not appear that in the case sub judice either the magistrate or the trial court made a finding that appellant was voluntarily unemployed or underemployed. Thus, the trial court erred in imputing potential income under this statute.[11]
Our conclusion is supported by another factor as well. We note that the statute expressly calls for the imputation of potential income on "nonincome-producing assets." R.C. 3113.215(A)(5)(b). Appellant testified that he deposited in a money market account (earning just over four percent 4% interest) most of the capital gain he received from the sale of stock. To this extent, the assets were income producing and did not fall within the rubric of assets to which potential income could be imputed under R.C. 3113.215(A)(5)(b). See Rapp v. Rapp (1993), 89 Ohio App.3d 85,89, 623 N.E.2d 624, 626-627; also see Pelikan v. Pelikan (Jul. 1, 1993), Cuyahoga App. No. 6292, unreported; Albertson v. Ryder (Jun. 30, 1992), Lake App. No. 91-L-103, unreported.
The terms of R.C. 3113.215 are mandatory and must be followed literally and technically in all material respects. Pauly v. Pauly (1997),80 Ohio St.3d 386, 389, 686 N.E.2d 1108, 1111; Marker v. Grimm (1992),65 Ohio St.3d 139, 601 N.E.2d 496, at paragraph two of the syllabus. If a statute's meaning is unambiguous and definite, the statute must be applied as written and no further interpretation is necessary. Clark v.Scarpelli (2001), 91 Ohio St.3d 271, 274, ___ N.E.2d ___, citing State exrel. Savarese v. Buckeye Local School Dist. Bd. of Ed. (1996),74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465. This statute does not allow for income to be imputed to a parent without finding that such parent is voluntarily unemployed/underemployed and, even then, income may only be imputed on those assets that are not already producing income. Under the facts of the instant case, potential income should not have been imputed pursuant to R.C. 3113.215(A)(5)(b) on appellant's 1999 capital gain. We therefore sustain appellant's second assignment of error.
Accordingly, based upon the foregoing reasons we hereby reverse the trial court's judgment and remand this matter to the trial court for further proceedings consistent with this opinion.
 _______________________________ Peter B. Abele, Presiding Judge
[1] The couple's oldest child was emancipated by the time of the dissolution proceedings below. With respect to their youngest child, the Shared Parenting Plan awarded joint custody and control and required appellant to pay $400 per month in child support.
[2] The attorney also filed the motion below actually represented the Adams County Child Support Enforcement Agency rather than appellee but, apparently, made the request on appellee's behalf.
[3] Civ.R. 52 states that requests for findings of fact and conclusions of law should be filed within seven days after the requesting party is given notice of the decision. It appears that appellant's request falls outside that time frame. However, the issue was not raised in the trial court and has not been raised on appeal. Thus, we will disregard it for purposes of our analysis.
[4] An agreed entry granted appellant additional time to file his objections.
[5] The trial court filed a nunc pro tunc entry on October 26, 2000 and declared that its judgment on appellant's exceptions to the magistrate's decision was a final, appealable, order. Appellant filed his first Notice of Appeal (Case No. 00CA702) from that entry.
[6] Appellee filed a Motion to Dismiss Case No. 00CA702 for lack of a final appealable order. This Court entered judgment on January 29, 2001, overruling that motion because the matter had since been decided. We also ordered the two cases consolidated for purposes of review.
[7] It is important to note that these distributions were not taxable events and would not appear on appellant's federal income tax returns. Rather, the income was already taxed at the shareholder level when earned by the company. To avoid double taxation upon distribution, federal law provides that the shareholder's basis in the sub-chapter S stock is increased by the amount of income passed through. Section 1367(a)(1), Title 26, U.S.Code. Then, upon future distribution of that income, the shareholder's basis in his stock is reduced. Section 1368(b), Title 26, U.S.Code; also see Bittker Eustice, Federal Taxation of Corporations and Shareholders (5th Ed. 1987) 6-26, ¶ 6.08[2]. Appellant's income tax returns thus provide little insight into the distributed earnings he has received.
[8] In particular, the trial court is directed to re-examine line 5 of its child support computation worksheet. That line attributes to appellant a "2 year average of sub-S income" from line 17 of his federal income tax return (form 1040). The court should assess to him not the undistributed corporate earnings but, rather, the portion of those earnings which were in fact distributed. That information, as mentionedsupra in footnote 7, cannot be gleaned from his income tax returns. It will require additional evidence (similar to Defendant's Exhibit 1) and, thus, another hearing may be warranted on remand.
[9] The magistrate's decisions and the trial court's judgment entries actually specify that the imputed interest pursuant to R.C. 3113.215(5)(b). We presume that this was a typographical error. See R.C.3113.215(A)(5)(b).
[10] We acknowledge that this statute was repealed effective March 22, 2001. See Am.Sub.S.B. No. 180, reprinted in 11 Baldwin's Ohio Legislative Service (2000). However, we must review the trial court's application of the law which existed at the time of the trial court proceedings.
[11] The magistrate and the trial court did make a finding that, to the extent the capital gain is not invested and used to generate income, "the [o]bligor is voluntarily underemployed in the use of his assets according to the intent of . . . O.R.C. Sec. 3113.215(5)." (Emphasis added.) We believe this view goes beyond the statute's language. The language regarding voluntary unemployment/underemployment speaks to the obligor's job situation rather than to his or her investment decisions. We are constrained to apply R.C. 3113.215(A)(5)(b) as it was written rather than the way we might think it should have been written. That said, the trial court could not impute income to appellant without first finding that he was voluntarily unemployed or underemployed.