OPINION
{¶ 1} Both parties in this divorce case believe that the Montgomery County Domestic Relations Court erred in its judgment, though in different ways. Susan Ulliman, plaintiff-appellant/cross-appellee, assigns error to the lower court's refusal to consider as income for support purposes roughly $17.5 million of retained earnings in a *Page 2 
limited-liability company that her ex-husband half owns. Based on this gross underestimate of his actual income, she also believes that the court erred when it refused her request that he pay her attorneys' fees. Her ex-husband, Matthew Ulliman, defendant-appellee/cross-appellant, in his cross appeal, assigns error to the trial court's failure to consider roughly $500,000 of marital debt in its division of the parties' marital property. Upon review, we find no merit in any of these assignments of error. For this reason, the judgment of the trial court is affirmed.
 {¶ 2} These are the pertinent facts. Susan and Matthew[1] were married in 1987 and were divorced in 2006. The trial court set the de facto end date of their marriage on December 31, 2006. In 1998, Matthew and Herb Schutte partnered to form Ulliman Schutte Construction Company, LLC ("Ulliman Schutte"). In the relative short time since, the two have built the company into a profitable going-concern, which they continue to own equally. A provision in the company's operating agreement, the aegis under which they run the company, requires that they alternate the position of president every so many years. Most recently, on January 1, 2008, it became Matthew's turn to assume that role. Though the president of the company has final decision-making authority, in practice they make most decisions jointly. Matthew receives a salary for his services as an employee, which has been an average of $225,000 per year over the past few years.
 {¶ 3} The partners have elected to have the Internal Revenue Service treat Ulliman Schutte as an "S corporation" for federal taxation purposes. This means that *Page 3 
instead of being taxed at the corporate level, each year the company's earned income is said to "flow through" to Matthew and his partner, who each claims half of the income on his personal tax return. The company disburses to each of them sufficient funds to pay the tax liability not only on the corporate income but also on their personal income.
 {¶ 4} The trial court found that Matthew's entire half-interest in Ulliman Schutte was marital property. Each party presented expert testimony on the value of Matthew's interest. The experts agreed that, because of the nature of the business, the "capitalized earnings" method of valuation would paint the most accurate picture of his interest's fair market value. The trial court accepted this method and fixed the value of Matthew's interest at $4,780,500.00, as of December 31, 2006. Dividing the interest equally between them, the court awarded Matthew the full marital interest and ordered him to pay Susan $2,351,250.00, her half of its estimated value.
 {¶ 5} The trial court also found that a four-percent interest in a partnership named KJB Partners was marital property. Though Matthew testified that he believed that the interest was worthless, no expert testimony was offered on the value. The court found it reasonable to value the interest at $140,000.00, the price paid to acquire it. The court divided this interest equally, giving Matthew the parties' entire interest in the partnership in exchange for $70,000.00 paid to Susan for her marital half. Beyond this, at some point after they acquired this interest, Matthew loaned the partnership $35,000.00, which has not yet been repaid.
 {¶ 6} The trial court awarded Susan both spousal and child support. Susan asked the trial court to consider half of Ulliman Schutte's retained earnings, in addition to his salary, as Matthew's income for support purposes. The court refused. To *Page 4 
consider retained earnings as his income, said the trial court, would constitute unfair "double dipping." Adopting the concurring opinions of the experts, the court explained that the value assigned to the marital interest was based on the company's historic earned income, the unspent sum of which makes up retained earnings. Susan was awarded her marital property share of the company's estimated value, which included part of these earnings. To consider retained earnings again, as Matthew's income for support purposes, would be allowing Susan to dip into the same income stream — the company's earned income — twice.
 {¶ 7} Considering only his employment income, the court found his average annual income to be $225,000, and it based its support decisions on this amount. After calculating Matthew's child support obligation according to the Child Support Worksheet, the trial court then roughly doubled the obligation to $1,800 per month in total child support, finding the higher amount necessary, it said, because it was in the children's best interest to maintain their standard of living. With respect to spousal support, the trial court determined that $5,000 per month was reasonable and appropriate.
 {¶ 8} The trial court rejected each party's request for an award of attorneys' fee. The court found that, based, in part, on the division of marital assets and the party's resulting income, each was able to pay his own costs.
 {¶ 9} The court also rejected Matthew's request that Susan's marital property award be offset to account for his higher-than-necessary 2005 tax bill. Matthew's tax bill for that year was approximately $83,000 higher because Susan refused to file jointly with him, opting instead to file separately out of concern for the accuracy of the representations on the joint return. He requested that Susan's marital property award *Page 5 
be offset by at least half this amount. Refusing to do so, the court stated that Susan had the right to file her taxes separately and equity did not demand an offset.
 {¶ 10} A domestic relations court's marital property and spousal support decisions receive great deference by reviewing courts, examined only for abuses of the trial court's discretion. Indeed, such a finding is required before these decisions are disturbed. See Booth v.Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028. A party who seeks to convince a reviewing court to reverse one of these decisions undertakes a formidable task. The party must convince the reviewing court that the decision could only be characterized in, at least, one of three ways — unreasonable, unconscionable, arbitrary. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. This is the standard that we use to review the parties' assignments of error, to which we now turn, beginning with Susan's.
 {¶ 11} She states her first assignment of error this way:
 {¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SET THE AMOUNTS FOR BOTH SPOUSAL SUPPORT AND CHILD SUPPORT, BECAUSE THE INCOME FIGURES USED BY THE COURT, FROM MATTHEW'S W2 FORMS, GROSSLY UNDERESTIMATED HIS ACTUAL INCOME."
 {¶ 13} Susan argues that the trial court erred by refusing to consider half of Ulliman Schutte's retained earnings part of Matthew's income for purposes of determining his spousal and child support obligations.[2]
We are not convinced. *Page 6 
 {¶ 14} A trial court has broad, but not unlimited, discretion in making spousal and child support decisions. Each support award is governed by a different statute, but both statutes provide an expansive definition of the parties' income that a trial court must consider in making these types of decisions. The spousal support statute unequivocally requires a trial court to consider the "income of the parties, from all sources." R.C. 3105.18(C)(1)(a). Similarly, "income" under the child support statute must include "the total of all earned and unearned income from all sources." R.C. 3119.01(C)(7). Although these statutory definitions of "income" are broad enough to encompass retained earnings, its mere presence is insufficient to require its inclusion. See Williams v. Williams (1991), 74 Ohio App.3d 838, 843,600 N.E.2d 739. Rather, courts generally examine the key factors of control and intent, with respect to these earnings, when deciding whether the earnings should be considered income under the statutes. Therefore, to decide whether it should be included in a party's income for support purposes, two sub-issues must be examined: First, whether the owning party exercises sufficient control over the decision to distribute or withdraw the retained earnings, and, second, whether the owning party is using the corporation to shelter income so as to avoid paying support. See In re Sullivan, 167 Ohio App.3d 458, 462-463, 2006-Ohio-3206. *Page 7 
In addition, we consider a third sub-issue, less commonly addressed, though no less important, that asks whether the owning party has exercised legitimate business judgment with respect to the use of the corporation's retained earnings.
 {¶ 15} The evidence is weak that Matthew's control over the retained earnings of Ulliman Schutte is sufficient to allow him unilateral access for personal reasons. Matthew and his partner jointly make most decisions with respect to the company. While the "veto power" that the operating agreement gives the company's president potentially permits unilateral withdrawal of retained earnings, there is no evidence that either partner has ever exercised this power for personal reasons. Moreover, the rationale for this provision is well-established. Indeed, it is common in business associations that have an equal number of partners or decision-makers. The provision serves to prevent decisional deadlock, which carries the potential to seriously impede the company's ability to function. Even if he had sufficient control, the law imposes on Matthew fiduciary obligations to his partner. These obligations would likely prevent Matthew, even if he were otherwise able, from unilaterally dipping into Ulliman Schutte's retained earnings account for personal reasons.
 {¶ 16} Finally, Ulliman Schutte's tax status as an "S corporation" is largely irrelevant to the question of control. It says little about Matthew's ownership of, or control over, any part of Ulliman Schutte's retained earnings. The decision to be taxed this way is one that is carefully made, often, though not always, because it results in a smaller tax bill. Although the company's income is said to "flow through" to Matthew, it does so metaphorically; no actual cash "flows through" to Matthew. Susan's assertion notwithstanding, this income is merely a number on his tax return, not cash in his *Page 8 
pocket.
 {¶ 17} In short, we find little evidence in the record to support the notion that Matthew has the right or ability to treat any portion of Ulliman Schutte's retained earnings account as his personal piggy bank.
 {¶ 18} Susan also fails to point to any evidence that suggests Matthew intended to shelter his income in the retained earnings of the company to avoid paying support. Neither the salary he receives nor the company's decision to retain its earnings has changed in a way that would suggest this. See Riepenhoff v. Riepenhoff (1990),64 Ohio App.3d 135, 580 N.E.2d 846 (no evidence to shelter income where the plan to retain income existed during the marriage and before the divorce).
 {¶ 19} We also examine a third sub-issue that we think is important to consider in the retained earnings analysis. It inquires into the business judgment exercised by the owner(s) of small, closely-held business with respect to retained earnings. Courts should consider the business-related reasons that prompt an owner to retain earnings, when deciding whether these earnings should be considered that spouse's income for support purposes.
 {¶ 20} To see why, consider a few aspects of the legal concept of a corporation. According to corporate theory, a corporation is a legal entity that exists separate from, and independent of, its owners. This means, for example, that it can act in its own capacity and hold legal title to property. It follows that a corporation can earn income from its activities and retain that income as its own property. To be sure, a corporation can act only through human agents, be they the owners or non-owning employees. Often, in small corporations owned by only one or two people, the conceptual line *Page 9 
between corporation and owner becomes blurred. Yet, when one owner withdraws money from the corporation, the owner is exercising his business judgment — for good or ill — on behalf of the corporation, directing it to disburse him cash. Cash is the lifeblood of a company, however, so there may be serious consequences if the company does not retain enough of it. This means that even with an unfettered right or ability to withdraw retained earnings, for a conscientious owner, who strives to exercise good business judgment, the decision to disburse the corporation's cash, for any reason, is often complex. The complexity of the decision naturally depends upon the particular business realities faced by the company at a particular time. Courts should consider the realities that face the party's company and the judgment, as it relates to retained earnings, that the party exercises in response.
 {¶ 21} In the case before us, the record is replete with evidence of the critical role that retained earnings-cash-plays in Ulliman Schutte's operations. It is needed, for example, to fund construction projects, pay debts and liabilities, and, importantly, meet the requirements imposed by its bonding company. In sum, the particular realities that Ulliman Schutte faces require it to retain a significant percentage of its earnings to support its present and future operations. Because of this, its earnings must be used judiciously to ensure its growth and success. Its current success is, in no small part, a product of good business judgment exercised by Matthew and his partner, which includes good decisions concerning the use of the company's earnings. We give Matthew and his partner's business decisions some deference. This means that we do not find Ulliman Schutte's sizeable accumulation of retained earnings convincingly in support of Susan's argument. In short, we find ample support for the trial court's *Page 10 
decision to exclude retained earnings from Matthew's income. Consequently, Susan's first assignment of error is not well taken.
 {¶ 22} Her second assignment of error is stated thusly:
 {¶ 23} "THE TRIAL COURT ALSO COMMITTED AN ABUSE OF DISCRETION WHEN IT REFUSED TO ORDER THAT MATTHEW SHOULD BE LIABLE FOR SUSAN'S ATTORNEY FEES."
 {¶ 24} Susan's principal argument here is because the trial court erred in grossly underestimating Matthew's income, it failed to recognize his far greater ability to pay her legal fees. To this argument, she adds that she was not the income-earner in the family and has no hope of obtaining gainful employment. An award of attorneys' fees is committed to the sound discretion of the trial court, and absent clear abuse of discretion will not be disturbed. Layne v. Layne (1992),83 Ohio App.3d 559, 568, 615 N.E.2d 332. In its written decision, the trial court considered the parties' marital assets, income, and the totality of the circumstances before finding that each had sufficient assets to pay their own attorneys' fees. Susan's argument here relies heavily on a favorable resolution of the first assignment of error, which we overruled. Furthermore, we think that the trial court had a reasonable basis for its decision. Therefore, we must reject this argument and overrule her second assignment of error.
 {¶ 25} Finally, we address Matthew's cross appeal. His sole assignment of error is as follows:
 {¶ 26} "WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DIVIDING THE PARTIES' ASSETS BY FAILING TO PROPERLY CONSIDER ALL FACTORS IN DIVIDING THE PROPERTY OF THE PARTIES AS *Page 11 
REQUIRED UNDER R.C. 3105.171."
 {¶ 27} Matthew argues that the trial court abused its discretion, in essence, by ignoring three marital debts in its property division decisions. He makes clear that he is not assigning error to the trial court's failure to actually and equitably divide these debts but rather its failure simply to consider them. In consequence, he argues, the trial court unequally divided this marital property without sufficient explanation as to why it was equitable to do so. His argument fails to convince us.
 {¶ 28} The statute governing marital property division requires a trial court to divide marital property equitably between the parties. R.C. 3105.171(B). Like assets, debts too are considered part of the marital property that must be divided. See Lookabaugh v. Lookabaugh
(Dec. 18, 1998), Champaign App. No. 98-CA-17. The division decision begins with an equal division, but the court may divide the property unequally if it believes that equality would be inequitable. R.C. 3105.171(C)(1).
 {¶ 29} The first putative debt that the trial court allegedly failed to consider is a $390,000.00 loan that Ulliman Schutte made to Matthew to enable him to pay the tax liability incurred on a portion of the parties' marital assets.[3] In the record, the details of this loan and the circumstances surrounding it, and precipitating it, are fuzzy, and Matthew does not provide any clarification in his brief, not even which marital property incurred the tax liability. We assume that, given its size, this loan represents, in large part, Ulliman Schutte's corporate tax liability on Matthew's interest. Regardless, there is clear evidence in the record that Ulliman Schutte has always paid the tax bill-corporate *Page 12 
and personal. Beyond this, we find it odd that Matthew, in essence, claims to have borrowed money from Ulliman Schutte to pay Ulliman Schutte's corporate taxes. Added to this is the scant evidence attesting to the loan.
 {¶ 30} Based on the evidence, or the lack thereof, we cannot say that the trial court was wrong not to consider this loan in its marital property division. The absence of evidence makes it impossible for us to conclude that the trial court should have considered it. The credibility of witnesses and relative weight of each piece of evidence is left to the discretion of the court. See Seasons Coal Co. V. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273. We think that the trial court had reasons to be suspicious, not least of which is based on the evidence that the company has always paid the tax bill. The trial court had reason to disbelieve that Matthew was given actual cash. Alternatively, the court could reasonably have believed that the loan would be forgiven later. Therefore, we find no abuse of discretion with respect to this loan.
 {¶ 31} The second alleged debt is a $35,000.00 loan made to KJB Partners, in which the parties owned a four percent interest. We first clarify that Matthew does not owe but rather is owed. In other words, this loan is not his debt but belongs to the partnership; to him it is an asset. Matthew's argument, then, appears to be that the trial court failed to consider this debt in its valuation of the marital interest in the partnership. A trial court has broad discretion to value marital property in a way that it finds reasonable. See Focke v. Focke (1992),83 Ohio App.3d 552, 554, 615 N.E.2d 327. The only pieces of evidence attesting to the interest's value are Matthew's anecdotal valuation that it is worthless and his uncontroverted testimony that it was purchased for $140,000.00. The court found it reasonable to assign the latter value. We do not think *Page 13 
that this was an error. The trial court had only a modicum of evidence before it attesting to the value of the interest. Matthew, in particular, presented no expert's opinion on the value. Besides, the consequence to Matthew is slight. Just as the interest that Matthew owns in the partnership gives him a "claim" to four percent of its assets, so too does the interest give him a four percent "share" of its debt. This means that the trial court did not consider $1,400.00 (four percent of the total loan). Considering the value of all the marital property in this case, we cannot say that saddling Matthew with an extra $1,400.00 of debt was an abuse of the court's discretion.
 {¶ 32} Finally, contrary to Matthew's claims, the trial court plainly did address his $83,976.00 2005 tax liability in its written judgment, as we discussed above. His assignment of error is overruled.
 {¶ 33} Finding no merit to any of the parties' assignments of error, the judgment of the trial court is affirmed.
FAIN, J., and WALTERS, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
[1] We will use the parties' first names throughout this opinion for convenience and clarity.
[2] The trial court refused to consider the retained earnings for a reason different from the one that Susan argues here. It based its decision on the belief, heavily influenced by the testimony of both parties' experts, that considering retained earnings as income for support purposes would be tantamount to awarding her the retained earnings twice-"double dipping" into the same income stream. This is not, however, the issue presented in Susan's appeal, and neither party briefed the issue for us. See Kahn v. Kahn (1987), 42 Ohio App.3d 61,536 N.E.2d 678 (rejecting the "double counting theory"); but, seeHeller v. Heller, Franklin App. No. 07AP-871, 2008-Ohio-3296 (accepting the "double dip" argument). Yet, the question of double dipping into retained earnings is analytically distinct from whether retained earnings should be considered income at all. Indeed, the latter is a threshold that must be crossed before the former even becomes relevant. For if a trial court determines that the retained earnings should not be considered income, the party dips into the income stream but once.
[3] We are unsure of the tax year here because the record before us connects this loan to both the 2005 and 2006 tax bills. *Page 1