OPINION
Appellant James William Cesa appeals the decision of the Court of Common Pleas, Coshocton County, which denied his motion to modify child support and spousal support. The appellee is Kathleen Jo-Ann Cesa, appellant's former spouse. The relevant facts leading to this appeal are as follows.
Appellant and appellee were married in 1970 in California and obtained a decree of dissolution in the Coshocton County Court of Common Pleas on July 15, 1998. The separation agreement incorporated therein required appellant to pay child support of $652 per month per child, for the two children born as issue of the marriage who were at that time still unemancipated. Appellant was also ordered to pay spousal support in the amount of $1,500 per month for fourteen years. The terms of the separation agreement continued as follows:
 As and for spousal support, HUSBAND shall pay to WIFE, through the Coshocton County Child Support Enforcement Agency (CSEA), the sum of $1,500.00 per month, plus the 2% processing charge, for a period of fourteen (14) years. This obligation shall terminate upon the death of either party of if WIFE remarries, dies, or cohabitates with an unrelated person of the opposite sex. To allow for a substantial change in circumstances on the part of either party, the court shall specifically retain authority to modify the amount and terms of spousal support pursuant to ORC Section 3105.18. In the event HUSBAND seeks a modification of spousal support at retirement, HUSBAND shall pay WIFE'S reasonable attorney fees associated with the modification proceeding, not to exceed the sum of $500.00. * * *
Separation Agreement, June 10, 1998, at 2.
On August 17, 2000, appellant filed a motion to reduce or terminate his spousal support obligation. The matter came on for hearing before a magistrate on November 21, 2000. In the meantime, on September 19, 2000, the Coshocton County CSEA filed a recommendation for child support modification, pursuant to R.C. 3113.216. On September 26, 2000, the trial court issued a judgment entry following the CSEA recommendation, thus setting child support at $948 per month for Julia, the parties' remaining unemancipated child. Several days later, appellant filed a motion with the court to reduce his child support obligation, alleging that he faced a significant change of income. The court scheduled a hearing on appellant's motion for November 21, 2000. On October 23, 2000, at the request of CSEA, the court vacated its previous entry setting child support at $948 per month. On October 31, 2000, CSEA again filed a motion to modify child support pursuant to R.C. 3113.216, with a recommended amount of $1,008.27, which the court also set for hearing on November 21, 2000.
On March 2, 2001, the magistrate issued a decision recommending spousal support remain at $1,500 per month, directing appellant to pay $500 for appellee's attorney fees, and modifying child support to $1,008.27 per month for Julia. On March 13, 2001, appellant filed objections thereto, pursuant to Civ.R. 53. He supplemented the objections ten days later with a motion entitled "Motion to Re-open the Hearing on Child Support Modification and/or Additional Objection." Appellant therein noted that the child support guidelines had been revamped by the General Assembly on March 22, 2001, in reference to Am.Sub.S.B. No. 180.
On April 30, 2001, the trial court issued an amended judgment entry overruling appellant's objections, except to adjust the child support obligation to $900.16 per month, to reflect a credit to appellant for the cost of providing Julia's health insurance. However, nearly simultaneously with the filing of the amended judgment entry by the court, appellant filed another motion to modify child support. The trial court denied the motion to modify on May 16, 2001, holding that appellant had failed to exhaust the available administrative remedies for child support modification pursuant to the newly-enacted R.C. 3119.60 and R.C.3119.76. On May 17, 2001, appellant filed a notice of appeal both as to the court's overruling of his Civ.R. 53 objections to the magistrate's decision and the court's dismissal of his second motion to modify child support. Appellant herein raises the following five Assignments of Error:
 I. THE TRIAL COURT'S DECISION NOT TO MODIFY AND/OR TERMINATE THE APPELLANT'S SPOUSAL SUPPORT OBLIGATION WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT AND IS NOT SUPPORTED BY AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT'S DECISION IN SETTING APPELLANT'S CHILD SUPPORT OBLIGATION WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT AND IS NOT SUPPORTED BY AND IS AGAINST MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT'S DECISION TOWARD THE APPELLANT TO PAY TO APPELLEE THE SUM OF $500 AS AND FOR ATTORNEY FEES PURSUANT TO THE SEPARATION AGREEMENT WAS CONTRARY TO LAW, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT AND IS NOT SUPPORTED BY AND IS AGAINST MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT'S DECISION NOT TO RE-OPEN THE HEARING ON CHILD SUPPORT MODIFICATION AND/OR TO DISMISS THE ADDITIONAL OBJECTION OF THE APPELLANT FILED MARCH 23, 2001, CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT.
 V. THE TRIAL COURT'S DECISION TO REQUIRE THE APPELLANT TO GO THROUGH ADMINISTRATIVE REVIEW FOR HIS MOTION TO MODIFY CHILD SUPPORT PRIOR TO FILING SAID MOTION IN COMMON PLEAS COURT WAS CONTRARY TO LAW AND CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT.
 I
In his First Assignment of Error, appellant argues that the trial court erred in refusing to modify his spousal support obligation. We disagree.
A review of a trial court's decision relative to spousal support is governed by a standard of abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131, 541 N.E.2d 597. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely and error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
R.C. 3105.18(E) permits a court that has authorized future modification of the amount or terms of spousal support in a divorce or dissolution decree to grant said modification upon a showing of changed circumstances. A change in circumstances " * * * includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). Although a change of circumstances may be considered in a modification request, it must not be purposely brought about by the complaining party. Berns v. Berns (April 18, 1988), Stark App. No. CA-7322, unreported, at 2, citing Bauer v. Bauer (April 15, 1982), Montgomery App. No. 7596, unreported. Likewise, whether a party is involuntarily or voluntarily unemployed is a matter for the trial court to decide, based on the facts of each case, and the decision is not to be disturbed absent an abuse of discretion. Rock v. Cabral (1993), 67 Ohio St.3d 108,616 N.E.2d 218.
The trial court, in its judgment entry adopting the magistrate's decision, ruled as follows regarding this issue:
 The Magistrate's finding that husband's forced retirement was a result of his own inappropriate behavior as a supervisor in his work place is supported by the record. The record establishes that he was warned (see T. 17 and 20), that complaints were made concerning his inappropriate touching of employees (see T. 19), that he was warned about both inappropriate comments and behavior (see T. 19 to 20), that his problems did not stop after a six month period of counseling in career management development in 1998 (see T. 21), that in particular, his relationship with one female employee resulted in a complaint that his "visiting" slowed her down in her work to the extent that she was going to get written up for not getting her work done and that his relationship with this employee was "a little bit more in that than just a casual conversation" (T. 22), and that his employer gave him only two choices: retire or be terminated (T. 23). Whether these incidents constitute sexual harassment of his employees or garden variety harassment of his employees is inconsequential. Similarly, whether his harassment of employees was intentional or not is of no consequence. The important factor is that his acts were voluntary and that they were continued without remission despite repeated warnings. Under such circumstances, the Magistrate's finding that the retire or be terminated ultimatum was brought about by his consistent refusal to stop his offensive conduct with certain employees is a finding which is justified in record.
Judgment Entry, April 20, 2001, at 2-3.
Appellant does not dispute that his retirement from the plant was facially voluntary. He instead argues that he was effectively forced to resign, maintaining that his "friendly and talkative-type" personality was both a blessing and a hindrance: "This personality was what allowed the Appellant to rise to the level of plant manager and earn income exceeding $100,000 per year. This personality only became a problem when the laws in the United States started to change which allowed employers to be sued for sexual harassment and/or hostile work environment." Appellant's Brief at 13. Appellant also asserts that he had limited time to obtain new employment, reiterating that less than three weeks elapsed from the date of his retirement to the date of the hearing before the magistrate on November 21, 2000. However, upon review of the record, we are unable to conclude that the trial court abused its discretion in determining that the changes in appellant's career did not constitute an "involuntary decrease" in his income per R.C. 3105.18(E).
Appellant also challenges the trial court's adoption of certain findings of fact concerning whether modification of spousal support was warranted. We review the trial court's decision as to those specific findings of fact under a manifest weight of the evidence standard. Under this standard, we do not weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
We first address appellant's challenge to the magistrate's finding that appellant engaged in a course of behavior of repeated sexual harassment in workplace. Appellant cites testimony by Lori Clark, human resources director at the plant, to the effect that appellant's behavior was not intentional and did not result in allegations of sexual contact between appellant and any employee. However, Clark's testimony clearly reveals an ongoing dilemma for the company in trying to amend appellant's behavior, and Clark conceded that but for appellant's conduct, he would have remained as plant manager. Tr. at 34. Therefore, competent, credible evidence supports the aforesaid finding.
Appellant next challenges several financial-based findings regarding each party's annual income, appellant's expenses in relation to his arrangement with his current fiancee, and the conclusion that appellee is in need of spousal support. However, in order to modify spousal support, the change in circumstances of the parties must be substantial, and it must be such a change as was not contemplated at the time of the prior decree. Caughenbaugh v. Caughenbaugh (April 1, 1987), Fairfield App. No. 32-CA-86, unreported. The Ohio Supreme Court has characterized the change as one in which the economic situation of either or both the parties has drastically changed. Wolfe v. Wolfe (1976), 46 Ohio St.2d 399 at 419. The decision to adopt, reject, or modify a magistrate's decision will not be reversed on appeal unless the decision was an abuse of discretion. Wadev. Wade (1996), 113 Ohio App.3d 414, 419. Even assuming, arguendo, the afore cited magistrate's findings were against the weight of the evidence, we would be unwilling to conclude that the trial court abused its discretion in declining to find the existence of a sufficient change of circumstances in light of the entire record. In that vein, we further find the trial court herein commendably indicated the basis for its spousal support decision in sufficient detail to enable us to determine that the conclusions were fair, equitable and in accordance with the law. See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93.
Appellant's First Assignment of Error is overruled.
 II
In his Second Assignment of Error, appellant maintains the trial court erred in establishing his current child support obligation. We disagree.
In Booth v. Booth (1989), 44 Ohio St.3d 142, the Supreme Court of Ohio determined an abuse of discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, supra. When a court analyzes a modification request on a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) in the Child Support Guidelines and the standards set out in Marker v.Grimm (1992), 65 Ohio St.3d 139. DePalmo v. DePalmo (1997),78 Ohio St.3d 535, paragraph two of the syllabus.
In the case sub judice, the trial court utilized an annual income figure for appellant of over $100,000 based on salary and bonuses from his former plant manager position, even though appellant was due to begin receiving deferred compensation in the amount just $16,911 per year, plus an annual "restoration benefit" of $5,924. As it concluded in regard to the issue of the spousal support modification, the trial court found appellant voluntarily unemployed. The test for voluntary underemployment is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned. Moauro v. Moauro (Nov. 6, 2000), Stark App. Nos. 1999CA00364, 1999CA00409, unreported, citing Woloch v. Foster (1994),98 Ohio App.3d 806, 811. In a somewhat related vein, this Court has previously held a violation of the law and subsequent incarceration are voluntary acts, not beyond the control of a child support obligor.Stewart v. Clay (Dec. 15, 1997), Stark App. No. 1997CA00161, unreported;Willis v. Willis (Feb. 23, 1998), Stark App. No. 1996CA0244, unreported. Although we herein are obviously not faced with a situation involving an obligor's criminal prosecution, appellant's employer nonetheless apparently feared potential civil lawsuits based on sexual harassment claims due to appellant's workplace behavior. Upon review of the record, and as per our analysis in appellant's previous Assignment of Error, we are unable to conclude that the trial court abused its discretion in setting child support based on its determination of appellant's voluntary underemployment.
Appellant's Second Assignment of Error is overruled.
 III
In his Third Assignment of Error, appellant contends the trial court erred in ordering him to pay $500 towards appellee's attorney fees. We disagree.
Appellant first cites several cases for the proposition that agreements to recover attorney fees for breach of contract are unenforceable under Ohio law. See, e.g. Driggs v. Credit Alliance Corp. (N.D. Ohio 1984),591 F. Supp. 1221, 1228; Snyder v. Snyder (1985), 27 Ohio App.3d 1, 4.
Certainly, separation agreements are subject to the same rules of construction as other types of contracts. Brown v. Brown (1993),90 Ohio App.3d 781, 784. However, we find appellant's cited caselaw inapplicable to the facts herein. Appellant was not assessed attorney fees because he breached the separation agreement; rather, he was exercising his right under said agreement to seek modification of spousal support, with the prearranged stipulation that he would be responsible for certain attorney fees, up to $500. Thus, the fees were triggered not by breach, but by a volitional enforcement of a section of the parties' agreement.
Appellant secondly asserts that the trial court erred by not taking evidence on the reasonableness of the attorney fees. It is well accepted law that a party is not permitted to complain of an error which said party invited or induced the trial court to make. See State v. Kollar
(1915), 93 Ohio St. 89, 91. During the magistrate's proceedings, appellant did not contest the actual amount of the fees, nor did he request a hearing, thus calling into doubt the appealability of this issue. See Prairie Twp. Bd. of Trustees v. Stickles (Feb. 22, 1996), Franklin App. No. 95APC07-941, unreported. Nonetheless, appellant raised the issue in his Civ.R. 53 motion; therefore, we will address it. Our research reveals that a hearing on attorney fees is not required under Ohio law unless the fees are a sanction for frivolous conduct under R.C.2323.51 or other statutory section that requires a hearing. See, e.g.,Wolk v. Wolk (Sept. 25, 2001), Mahoning App. No. 98CA127, unreported, citing Meyers v. Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82,102; Okocka v. Fehrenbacher (1995), 101 Ohio App.3d 309, 321. We are certainly cognizant of the mandate of R.C. 3105.18, to the effect that:
 (H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
We find this provision is inapplicable to the case sub judice. The fundamental issue of whether attorney fees should be awarded at all was previously decided at the time the separation agreement was incorporated into the dissolution decree in 1998. Appellant presents no authority for the proposition that R.C. 3105.18(H), or any other statute or rule, requires a separate hearing on the amount of attorney fees awarded, once the fees have been deemed awardable. This Court recently concluded, at least as regarding contempt actions in domestic relations cases, that a trial court may award attorney fees in the absence of supporting evidence when the amount of work and time spent on such a case is apparent.Labriola v. Labriola (Nov. 5, 2001), Stark App. No. 2001CA00081, unreported, citing Wilder v. Wilder (Sept. 7, 1995), Franklin App. No. 94AAPE12-1810, unreported. Based on our review of the record, the procedural history of the matter sub judice, and the limited amount awarded, we find no error in the court's award of attorney fees to appellee in the amount allowed under the separation agreement. Appellant's Third Assignment of Error is therefore overruled.
 IV
In his Fourth Assignment of Error, appellant maintains the trial court abused its discretion in denying his "Motion to Re-open the Hearing on Child Support Modification and/or Additional Objection" of March 23, 2001. We disagree.
Appellant first alleges that the trial court failed to properly adjust child support for health care expenses. However, appellant provides us with no specifics as to this alleged error. See App.R. 16(A)(7). As herein before noted, the trial court did make corrections based on appellant's health insurance costs for Julia in its amended order of April 30, 2001. We find no merit in appellant's position in this regard.
Appellant next essentially argues that the trial court failed to accord him the benefit of the changes to Ohio child support laws effective March 22, 2001. He directs us to the recently-enacted R.C 3119.05(B) and R.C3119.01(C)(7), which, respectively, direct a credit to an obligor's income for spousal support paid per annum, and add to an obliges' income any spousal support received. Under the facts of the present case, this could represent as much as $18,000 to be factored into each parent's side of the support worksheet. Nonetheless, appellant's arguments must fail in light of the procedural history of this case. R.C. 1.58 reads in pertinent part: "(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section: (1) Affect the prior operation of the statute or any prior action taken thereunder; (2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder; ***." When appellant filed his motion to re-open hearing on March 23, 2001, the trial court had yet to finalize a decision on the various previous motions filed in regard to child support from September and October 2000. Thus, appellant's March 23, 2001 motion was made merely in furtherance of a modification process begun under former R.C. 3113.215
and R.C. 3113.216, prior to their repeal. Therefore, these older statutes would have governed said motion. Accord Leffel v. Leffel (June 15, 2001), Clark App. No. 2000-CA-78, unreported, at f.n. 3, citing Weist v.Weist (Mar. 10, 2000), Montgomery App. No. 1498, unreported at 5-6.
The trial court did not err in denying appellant's March 23, 2001 motion to re-open. Appellant's Fourth Assignment of Error is overruled.
 V
In his Fifth Assignment of Error, appellant contends that the court erred in dismissing his second motion to modify child support on the grounds that appellant had failed to exhaust his administrative remedies. We agree.
Presently, CSEA review of court child support orders is principally addressed in R.C. 3119.63. Our review of the text thereof does not demonstrate an intent by the General Assembly to foreclose direct court review of court child support orders upon petition by either parent. Generally, "* * * we must presume the legislature means what it says; we cannot amend statutes to provide what we consider a more logical result."State v. Virasayachack (2000), 138 Ohio App.3d 570, 574. In that vein, R.C. 3119.79, which was also enacted as a result of Am.Sub.S.B. No. 180, supports the conclusion that direct court modification requests are still viable: "(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. ***." The remainder of R.C. 3119.79 makes no mention of administrative procedures for modification. In contrast, R.C. 3111.381, which pertains to administrative procedures for the establishment of paternity, explicitly mandates, with certain exceptions, "* * * no person may bring an action under sections 3111.01 to 3111.18 of the Revised Code unless the person has requested an administrative determination under section 3111.38 of the Revised Code of the existence or nonexistence of a parent and child relationship." No similar provision is found in regard to the administrative modification procedures set out in R.C. 3119.60, et seq.
Pursuant to R.C. 3105.65(B), a court which grants a dissolution decree has full power to enforce its decree and retains jurisdiction to modify all matters pertaining to child support. We conclude that had the General Assembly intended the prerequisite of administrative remedy exhaustion in order for a court to have jurisdiction for child support modification, we would find clearer statutory guidance to that effect. Cf., e.g., MinorChild of Zentack v. Strong (1992), 83 Ohio App.3d 332, 336.
The trial court therefore erred in dismissing appellant's second motion to modify child support on jurisdictional grounds. Appellant's Fifth Assignment of Error is sustained.
For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Coshocton County, Ohio, is hereby affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Coshocton County, Ohio, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Costs to be split between appellant and appellee.
Hon. Julie A. Edwards, P. J. Hon. John W. Wise, J. Hon. John F. Boggins, J. concur.